## Jack *against* Dougherty.

3w 151
189  347

3 W    151
203    ¹450

3 W    151
207    ¹623
e 23 SC ¹435

Parol evidence may be admitted to prove a consideration other or greater than that expressed in the deed, to rebut the presumption of fraud arising from the inadequacy of such expressed consideration.

Whether the circumstances, of a deed expressing a consideration, when none in fact was paid, and of no security for the property being placed on record, were sufficient grounds for inferring a fraudulent intent in the grantor, was properly not decided by the court below as matter of law, but left to the jury as a question of fact.

Where the plaintiff had shown a title which would have entitled him to a verdict, unless that of the defendant were better, it was error in the court below to instruct the jury that they were not called upon to decide the validity of the defendant's title, but that of the plaintiff alone.

It was also error to instruct the jury that the plaintiff's title would not enable him to recover on the ground of fraud in a prior conveyance from one defendant to the other.

Where the plaintiff, from the face of his deed, appeared to be a purchaser for a valuable consideration, and if that consideration was impeached on the trial, whether a valuable consideration was given or not, became a question of fact for the jury to decide.

ERROR to the common pleas of *Alleghany* county.

This was an ejectment for a tract of fifty-one acres of land, brought by Samuel Jack against John Dougherty and James Dougherty. John Dougherty, one of the defendants, was admitted to have been originally the legal owner of the land in dispute. On the 29th of October 1829 John Dougherty entered into an article of agreement with Samuel Wilson for the sale of the land, in consideration of Wilson assigning or transferring to him all the money and property coming to the said Wilson from a certain James Shields, on a sale made by Wilson to Shields, of a lot of ground in Pittsburgh. On the 11th of January 1830 a deed for the land in controversy was executed by John Dougherty to Samuel Jack, which was recorded on the 13th of the same month. This deed refers to the articles of agreement between John Dougherty and Wilson; recites that " the said Dougherty hath received from the said Wilson the full consideration to be paid as stated in said articles; and said Wilson, for a valuable consideration, and with the knowledge of said Dougherty, hath assigned and transferred to Samuel Jack all the interest of him the said Wilson in said articles;" and mentions " the premises and the sum of *one dollar*," paid in hand by Jack, as the consideration.

The defendants contended that Wilson had no interest in the land, on the 11th of January 1830, when the above deed to Jack was executed, inasmuch as the agreement between Shields and Wilson had been cancelled, and the agreement between Wilson and John

[Jack v. Dougherty.]

Dougherty had therefore become a nullity; and that the deed from John Dougherty to Jack had been obtained under circumstances of fraud and oppression; and relied upon a deed from John Dougherty to his brother James, executed and recorded on *the 7th of January* 1830, the consideration of which was 450 dollars.    In January 1830 Jack called on Shields to inquire about the agreement between Shields and Wilson, when he was informed by Shields that said agreement had been cancelled, by consent, some time in November 1829.    John Dougherty was in company with Jack.    Dougherty had never before asked Shields about said agreement.    Shields then understood from them that Jack had been getting some land from John Dougherty.    Wilson said to Shields, that he (Wilson) was able to make John Dougherty safe, although the agreement between Wilson and Shields was cancelled.    In 1829 John Dougherty and Wilson were in partnership in making turnpike.    James Dougherty had been living on the land from the 1st of April 1829, having originally entered under a lease from John, dated the 6th of January 1829.    James had no property when he went to live on the land. His friends had assisted him to come from Ireland.    He was aware that in the fall of 1829 Wilson was at his house to see about the land.    John had been living with James for two and a half years. John was a single man, and worked in the neighbourhood and on the place in dispute.    For working on the place it was understood he was paid by James.    On the 9th of January 1830 John Dougherty was confined in the jail of Westmoreland county on an execution against him, of that date, for 33 dollars in favour of Jack. Wilson was deputed by the constable to serve the writ.    Dougherty was released on the 11th of January 1830 by Jack from prison. Wilson, when about taking Dougherty on the execution, was heard to say he would compel Dougherty to make a deed for the land. Jack was not present when this expression was made.    John Dougherty and Wilson were in partnership, as before stated, and Jack had made advances to the hands who worked for Wilson.    Dougherty, at the time of his arrest, had gone to see Jack and Wilson about the land.

John Y. Barclay, Esq. testified that the deed and assignment from John Dougherty to Jack were drawn in his office, at Greensburgh, on the 11th of January 1830, and that he knew nothing of Dougherty having been in jail.    Wilson, Jack and Dougherty came to his office together.    The article and assignment, and also the deed, were fully read and explained to Dougherty.    The transaction was talked of, and Dougherty was satisfied with the arrangement, but was at first unwilling to make the deed.    He was then told by the witness that the assignment would be of no use unless the deed was executed.    Some conversation took place as to the right that Wilson had to compel Dougherty to make the deed.    Something was said in relation to the article between Shields and Wilson.    The witness then stated a deed should be made, and fully explained the reason

[Jack v. Dougherty.]

why Jack could not compel Dougherty to make a deed. Dougherty always professed to be willing to secure the land to Jack, and finally agreed to execute the deed. Not a word was said in witness's office about Dougherty's deed to his brother James. Dougherty and Wilson said they wished to secure Jack by giving him the land, and left it to the witness to secure it in such a way as to make it binding. They valued the property at 450 dollars.

The plaintiff then asked the witness, "Did they tell you any money had been paid?" This question, upon objection, was overruled by the court below, to which exception was taken.

The plaintiff then proposed to prove by the witness, that the parties came into his office to have the papers executed; that they told him Wilson and Dougherty had been partners in turnpiking, a fact which he knew before; that they told him they were indebted to Samuel Jack in the sum of 550 dollars. The evidence thus offered was objected to by the defendant's counsel. The objection was sustained: to which the plaintiff's counsel excepted.

The counsel for the defendant requested the opinion of the court below upon the following points:

1. The title produced by the plaintiff will not enable him to recover upon the ground that the conveyance by John Dougherty to James Dougherty was fraudulent. On this point the court instructed the jury as was requested.

2. The conveyance last mentioned was voluntary, and cannot be set aside by the plaintiff under the statute of 27 *Elizabeth*. If it was voluntary, still the plaintiff is not a purchaser for a valuable consideration. He cannot therefore impeach it in this case. On this point the court instructed the jury as requested by the defendant's counsel.

Amongst other points submitted by the plaintiff's counsel to the court below were the following:

4. That the deed from John Dougherty expressing a consideration paid, when none in fact was paid and no security for the property placed on record, is fraudulent and void as to the creditors of John Dougherty; on which point the court refused to charge the jury, as requested, as matter of law, but instructed them that the facts set forth on this point were circumstances from which the jury might infer a fraudulent intent, if in their opinion the facts warranted such inference.

5. That if the jury believe that John Dougherty was indebted at the time of the execution of the deed, or made the deed with a view to future indebtedness, the deed is fraudulent and void. On this point the court instructed the jury, that making the deed, under the circumstance of no consideration being passed at the time, would be fraudulent; and further instructed the jury, that they were not called upon to decide the validity of the defendant's title, the only question being how far the plaintiff had made out his own.

Assignment of errors.

III.—U

1. The court erred in overruling the testimony embraced in the first and second bills of exception.

2. The court erred in their answer to the fourth point made by the plaintiff's counsel.

3. In their answer to the fifth point made by the plaintiff's counsel.

4. In their answer to the first point made by the defendant's counsel.

5. In their answer to the second point made by the defendant's counsel.

*Fetterman,* for plaintiff in error.

John Dougherty and Wilson, while partners in making turnpike, became indebted to Jack to the amount of 400 or 450 dollars. We offered to show that this was the real amount of the consideration of the deed from Dougherty to Jack : but the court refused to admit evidence that the consideration exceeded 1 dollar, the sum mentioned in the deed. If we had been permitted to prove the consideration, we would have shown that the deed from John Dougherty to his brother was entirely fraudulent. His brother was poor, and had no property. Mr Barclay, the witness, would have proved the fact of Wilson and Dougherty's indebtedness to Jack. A party is at liberty to prove what took place at the time the instrument was executed. White *v.* Weeks, 1 *Penns. Rep.* 486 ; Marghy *v.* Hauer, 7 *Johns. Rep.* 341. Evidence is admissible to show that the consideration was greater or less than the one expressed. Garrett *v.* Stuart, 1 *M'Cord* 516. Either party may aver a consideration different from that in the deed, but not to prejudice a *bona fide* purchaser. Duvall *v.* Bibb, 4 *Hen. & Munf.* 113 ; Harvey *v.* Alexander, 1 *Randolph* 219 ; *Norris's Peake* 188, and the cases there collected. Mackey *v.* Brownfield, 13 *Serg. & Rawle* 239. The court has equity powers. Iddings *v.* Iddings, 7 *Serg. & Rawle* 111. The case, indicated in the second error assigned, was that of one brother selling to another, where the vendee was worth nothing and the vendor was embarrassed. The answer of the court below to the fifth point suggested by the plaintiff, was erroneous. The jury ought to have been permitted to try both titles. The charge, however, required the jury to consider the plaintiff's title alone. The instructions given to the jury on the first point made by defendant's counsel, and the fifth point submitted by the counsel of the plaintiff, are contradictory and inconsistent.

*Forward,* for defendants in error,

Contended, that as the agreement between Shields and Wilson was cancelled, the agreement between Wilson and Dougherty became a nullity, &c. Where a consideration is mentioned in a deed, no other can be shown, unless the deed refers to other considerations. Hildreth *v.* Sands, 2 *Johns. Ch. Ca.* 43.

[Jack v. Dougherty.]

*A. W. Foster*, in reply.

A good and valuable consideration passed from Samuel Wilson to John Dougherty for said land, and although the article between Shields and Wilson was rescinded (and which could have been enforced by John Dougherty, if he had given notice to Shields of his interest in it), yet the article between Samuel Wilson and John Dougherty was not rescinded, but continued by their express consent, as evidenced by Dougherty receiving payments on account thereof. It was merely constituting Wilson paymaster to John Dougherty, instead of Shields, by the consent of Dougherty. The amount thus paid, and his proportion of the money due S. Jack, which was satisfied by Wilson's conveyance to Jack, would pay him the full amount due him by Dougherty : therefore an equitable interest in said land was vested and continued in Wilson, which he could and did assign to Jack, the consideration for which assignment it was competent for the plaintiff to prove, and which was actually proved by different witnesses. The article of John Dougherty to Wilson was paramount to the deed to his brother James, independent of the statute of 27 *Elizabeth.* The deed from Wilson to Jack does not confine the consideration to "*one dollar*," but to the "assignment of the article by Wilson to Jack," for which Wilson had given a valuable consideration to John Dougherty, and Samuel Jack also to Wilson. This constituted a deed for a good and valuable consideration, as if paid for in sheckels of silver. The court therefore erred in refusing all the testimony offered of the consideration of the assignment to Samuel Jack ; and although the court were right in deciding the mere omission to have the purchase money from James Dougherty secured by matter of record, not to be fraud in law, but matter of fact for the jury to decide, yet the court erred in point of law in withdrawing the case from the jury, and deciding as matter of law, that the defendant's title, even if the deed to James Dougherty was fraudulent, could not be affected by the plaintiff's claim; and also deciding as matter of law that the defendant's deed was not voluntary nor void by the statute of 27 *Elizabeth*, all which depended on facts which ought to have been submitted to the jury.

The opinion of the Court was delivered by

KENNEDY, J.—The first error assigned embraces two bills of exception taken to the opinion of the court below, rejecting evidence offered by the plaintiff in error to prove a much larger money consideration than that inserted in his deed of conveyance from John Dougherty, one of the defendants, in order to relieve it from the imputation of having been obtained by fraud from Dougherty. This evidence consisted of the declarations and admissions of the parties made at the time of the execution of the deed by Dougherty to the plaintiff; which were offered to be proved by the scrivener who drew the deed, and was present at the execution of it. It appears to me that they were part of the *res gesta*, and according to the settled rule

in this respect ought to have been admitted in evidence. But it is objected that the evidence was not competent or admissible, because it tended to show that the consideration for making the deed was different from, and inconsistent with, that expressed in it. The first authority that occurs to me now which seems to sustain the objection, is the case of Clarkson *v.* Hanway, 2 *P. Wms* 203, where the master of the rolls held that a different consideration from that expressed in the deed could not be averred and proved; because, as he thought, it would be liable to the danger of perjury, which the statute intended to guard against. And Lord Hardwicke afterwards, in Peacock *v.* Monk, 1 *Ves.* 128, says, "where any consideration is mentioned, as of love and affection only, if it is not also *and for other considerations,* you cannot enter into the proof of any other; the reason is because it would be contrary to the deed: for where the deed says it is in consideration of a particular thing, that imports the whole consideration and is negative to any other." And again, in Watt *v.* Grove, Lord Redesdale held that an impeached deed could not be supported by evidence of considerations different from those expressed in it; which possibly was going still further than Sir Joseph Jekyll or Lord Hardwicke intended. It also appears that some of the late English text writers upon these authorities, seem to think it the settled rule now in England, that although a deed may in equity be impeached by averments negativing the consideration therein expressed, yet it cannot be supported by evidence of considerations different from those alleged in it. 2 *Hovenden on Frauds* 103.

This rule also seems to have been adopted in New York. Schemerhorn *v.* Vanderheyden, 1 *Johns. Rep.* 139; Homes *v.* Barker, 3 *Johns. Rep.* 509, 510; Margley *v.* Hauer, 7 *Johns. Rep.* 342; Hildreth *v.* Sands, 2 *Johns. Cha. Rep.* 43.

Although this be the rule which prevails at the present day in England, of which, however, I entertain some doubt, yet I am inclined to believe that prior to the time of the earliest of the authorities referred to, the rule was not only held to be different, but has been considered so, occasionally at least, since the date of the most of them. In Villers *v.* Beaumont, decided in *Pasch.* 3 and 4 *Phil. & M.,* reported in *Dyer* 146 (*a*) and *Benloe's Rep.* 39, it was ruled in the case of a deed purporting on its face to be made in consideration of 70 pounds, alone, without more, that marriage also might be averred and proved as an additional consideration; because, as the court said, it stood with the deed, and was not repugnant to it. This case is likewise recognized and mentioned without any disapprobation in Mildmay's case, 1 *Co.* 176 (*a*). In Newcomb *v.* Bonham, 2 *Cha. Ca.* 61, it is laid down that a consideration of blood not expressed in the deed may be proved in addition to a money consideration mentioned in it. And in The King *v.* The Inhabitants of Scammonder, 3 *Term Rep.* 474, the consideration expressed in the deed of conveyance was 28 pounds, without any mention of other consideration; and parol evidence was admitted to prove that 30

pounds was the real consideration. Lord Kenyon said, "it was clear the party might prove other considerations than those expressed in the deed. It is permitted in all cases of covenants to stand seised to uses." He also cites the case of Filmer *v.* Gott, 7 *Bro. P. Ca.* 70. Mr Sugden in his *Treatise on Vendors* 473 (Philadelphia 1820), in speaking of a voluntary settlement says, "although *apparently* it be voluntary, yet if a valuable consideration were paid or given, parol evidence is admissible in order to support the deed and rebut the supposed fraud," and adds, "this seems to be admitted by all the cases." Mr Phillips, after reciting most of the English authorities last above referred to, concludes by saying that they "appear to establish the rule that, although a consideration is expressed, some other additional consideration may be shown not inconsistent with the former."

In Virginia, according to the decisions of the court of appeals, the tribunal of dernier resort in that state, in equity, either party may prove the true consideration of the deed, though different from that expressed in it. Duval *v.* Bibb, 4 *Hen. & Munf.* 113. So in Eppes *v.* Randolph, 2 *Call's Rep.* 103, it was ruled that although the deed did not mention that it was made in consideration of a marriage contract, the party may aver and prove it. And in Harvey *v.* Alexander, 1 *Rand.* 219, it was decided that where the deed was made in consideration of "natural love and affection," and the further consideration of "one dollar," parol proof was admissible of *other valuable* considerations. Mr Justice Cabell, who delivered the opinion of the court, says, "the question whether evidence inconsistent with the deed can be admitted does not arise in this cause. This is not the case of a deed purporting to be for good consideration only. It is in express terms for valuable as well as for good consideration. It is true, that the valuable consideration expressed is only one dollar; but one dollar, viewed as a consideration, is as much a valuable consideration as a million of dollars. The real question is, whether a deed purporting to be for 'love and affection' and for 'one dollar,' and assailed as being fraudulent as to creditors, can be supported by evidence showing that in addition to the one dollar expressed, full value was received by the grantor." And again he observes further: "it is believed to have been the practice at an early period, both in England and in this country, for deeds not to express the actual sum, but a nominal one only." I have some reason to believe that such a practice may be affirmed with great truth to have obtained at one time in this state. The rule laid down by the court of appeals of Virginia, in the last mentioned case, is recognized and sustained by the supreme judicial court of Massachusetts in Bullard *v.* Briggs, 7 *Pick.* 533: where the consideration alleged in the deed was 1500 dollars, without any reference to or mention of other consideration, parol evidence was admitted on behalf of the grantee, to show that the true consideration was a release of right of dower executed by the wife of the grantor to certain real estate, which he was about giving and did give a mortgage on, in consideration of which the

property in the deed was conveyed to the grantee, the mother of the wife, in trust for her daughter, and not in consideration of 1500 dollars paid by the grantee as expressed on the face of the deed. Chief Justice Parker, in delivering the opinion of the court, says, " The consideration proposed to be proved is different from that expressed in the deed, and it is objected that the deed is conclusive upon this point; but we think it has been reasonably settled that this matter is open to evidence. More or less than is expressed in a deed may be proved by parol evidence as the consideration; and even a different consideration, if valuable, may be proved. A deed is valid in law with any valuable consideration, however small; but as inadequateness of consideration may be relied on as evidence of fraud, the party claiming under it may show that another and greater consideration was given than that which is expressed : and this is done to rebut the presumption of fraud which might arise from the apparent consideration in the deed. Cases of this kind are of frequent occurrence in the investigation of conveyances alleged to be fraudulent."

Although I cannot recur to any adjudged case in this state where any rule has been laid down in respect to the admission of parol evidence on this subject, yet I am inclined to believe that it has been frequently admitted to prove a greater and even a different consideration from that expressed in the deed, in order to support it where it was assailed on the ground of fraud, by showing the inadequacy of the consideration mentioned in it. In White *v.* Weeks, 1 *Penns. Rep.* 486, it was decided that where no consideration was expressed in a deed of bargain and sale, parol evidence might be admitted to show that a consideration did pass from the grantee to the grantor. This, however, is nothing more than what every court that has adjudicated on the subject has admitted to be correct: for all agree that such evidence is perfectly consistent with the deed, and therefore admissible to give it efficacy. It is plain from all the cases on this point, that any discrepancy which may appear to exist in the decision of them arose entirely from a difference of opinion among judges as to what was, or was not inconsistent with the terms of the deed : some judges thinking that the insertion of any particular consideration in a deed, without more, expresssly negatived the fact of its being founded upon any other or greater consideration; while others, conceiving that, as the law did not always require the true or the whole of the true consideration to be inserted in order to give the deed validity, and that therefore it frequently happened that but little regard was paid by the parties to the consideration set forth in the deed, whether it was the whole consideration or not, leaving it perhaps to the scrivener to put in such of it as in law he might deem sufficient to make the deed operative, thought it unreasonable to make the consideration so introduced into the deed conclusive upon the parties, so as to preclude them from showing the true, or the whole consideration, whenever the ends of justice might seem to re-

[Jack v. Dougherty.]

quire it.   The consideration being thus inserted, rather to meet the exigency of the law than the whole truth of the case, it was held not to be inconsistent with the intention of the parties, which ought always to give force and meaning to the terms of the deed, to admit parol evidence to show what the true consideration of it was.   No consideration being expressed in the deed has never been held to do more than to raise the presumption that none passed: and why should the circumstance of a particular consideration being expressed in it do more than raise a like presumption that no other or greater than that mentioned was given?   I am inclined to believe that this is the point of view in which the law, as it was originally settled in that country whence we have derived our rules of jurisprudence, considered this matter : and being only ground for *presumption*, and not for *construction*, it was capable of being removed by parol evidence.

It is as Lord **Thurlow** said in Coote *v.* Boyd, 2 *Bro. Ch. Rep.* 527, "*a question of presumption, donec probatur in contrarium, and will let in all sorts of evidence.*   Where the presumption arises from the *construction of words simply qua words*, no evidence can be admitted."

As to the objection, that such evidence ought not to be received because it may be productive of perjury, and consequently work great injustice, it is obvious that there can seldom occur any occasion for offering it, unless for the purpose of repelling parol evidence previously given by the other party in order to show fraud; and as the door is always open for every kind of evidence to establish fraud, notwithstanding it may sometimes be attended with perjury when given for that purpose, it would seem but fair to put both parties on an equal footing, and to permit it to be repelled by the same species of evidence which may be given to prove it.   I therefore think that the evidence offered by the plaintiff ought to have been received, and that the court erred in rejecting it.

The second error is, that the court erred in their answer to the fourth point of the defendant's counsel; but as only two points appear to have been submitted by the defendant's counsel, it is presumed that this error was extended to embrace the answer of the court to the fourth point of the counsel for the plaintiff: and if so, it is sufficient to say that there is nothing erroneous in it.

The third error is, that the court erred in their answer to the plaintiff's fifth point, in directing the jury, among other things, " that they were not called upon to decide the validity of defendant's title; the only question being how far the plaintiff had made out his own."  In this I think there was error; for the plaintiff had shown a title upon which the jury ought to have given a verdict in his favour, unless the title set up by the defendant were better; hence it was necessary, under a proper direction from the court, for the jury to pass upon both titles.

The fourth error is an exception to the charge of the court on the defendant's first point; in which the defendant's counsel requested the court to instruct the jury that the title produced by the plaintiff

would not enable him to recover, upon the ground that the convey-
ance by John Dougherty, one of the defendants, to James Dough-
erty, the other defendant, was fraudulent; and the court accordingly
did so. In this I also think the court erred; for if the deed of con-
veyance from John to James Dougherty was fraudulent, and made
between them for the purpose of disabling John from a fulfilment of
his contract to convey the land in dispute to Wilson, who assigned
the contract to the plaintiff, it was void as against the plaintiff; or
if the deed of conveyance from John Dougherty to the plaintiff was
made in discharge of a debt or debts, for the payment of which John
Dougherty was bound to the plaintiff, and the deed of conveyance
from John to James Dougherty was made for the purpose of defeat-
ing the payment of such debt, it ought to have been considered fraud-
ulent and void as against the plaintiff, who in either case would be
entitled to recover the land upon the deed of conveyance made to
him.

The fifth and last error assigned is an exception to the answer of
the defendant's second point; in which the court told the jury that
if the deed of conveyance from John Dougherty to James Dougherty
were voluntary, still the plaintiff could not recover by force of the
statute of 27 *Elizabeth,* because he was not a purchaser for a valu-
able consideration. In this it appears to me the court were mista-
ken; for the plaintiff, from the face of his deed, appeared to be a
purchaser for a valuable consideration; and if the consideration
therein expressed was impeached by the testimony given on the
trial, whether a valuable consideration was given or not, then it be-
came a question of fact proper for the jury to decide on: but the
court, by their direction on this point, usurped the province of the
jury, by deciding both the law and the fact for them.

Judgment reversed, and a *venire de novo* awarded.