## Huss *et al. versus* Morris *et al.*

63          367
20 SC ⁷416

1. The mistake of a scrivener in preparing a writing may be shown by parol evidence, and the instrument reformed accordingly.

2. Such reformation is an exercise of the equity powers of all our courts.

3. Equity relieves against mistake as well as against fraud.

4. In a voluntary conveyance our courts will not distinguish between children and grandchildren in the exercise of their equitable powers in correcting a plain mistake in a conveyance intended for their benefit.

5. This would be especially so when the correction is made to render valid and effectual what would otherwise be void for informality.

6. Mistakes may be so apparent on the face of an instrument that courts will construe it as it ought to have been drawn.

7. The liberality of courts has been particularly exercised as to the statement of the consideration both in correcting what is wrong and inserting what has been omitted.

8. "Grandchildren" substituted, by parol evidence, for "heirs of my son," in a deed in this case.

November 19th and 20th 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

[Huss *v.* Morris.]

Error to the Court of Common Pleas of *Greene county :* No. 114, to October and November Term 1869.

This was an action of ejectment, commenced March 16th 1866, by Eleanor A. Huss and others, children of Andrew Lantz, Jr., deceased, against Elijah Morris and others, for the undivided fifth part of a tract of 430 acres of land. Both parties claimed title under Andrew Lantz, Sr., deceased.

On the trial, February 18th 1869, before Gilmore, P. J., it was proved for the plaintiffs that they were grandchildren of Andrew Lantz, Sr., and were all born in his lifetime.

The plaintiffs gave in evidence a deed dated June 26th 1853 "between Andrew Lantz, Sr., of, &c., of the first part and the heirs of his son Andrew Lantz, Jr., of, &c., of the other part." The deed witnessed " that the said party of the first part for the natural love and affection he hath for said heirs as well as for and in consideration of the sum of one dollar," &c., granted to "the said party of the second part and to their heirs and assigns for ever," all the following described tracts of land," &c. This deed covers the land in question in this suit.

They gave in evidence another deed of the same date " between Andrew Lantz, Sr., of, &c., of the first part and the heirs of Andrew Lantz, Jr., of, &c., of the other part." It witnessed, "that the said party of the first part for the natural love and affection he hath for his grandchildren as well as for and in consideration of the sum of one dollar," &c., granted, " to the said party of the second part and to their heirs and assigns for ever, all the following described tracts," &c. Both deeds were acknowledged before the same justice, January 2d 1854, and recorded April 11th 1859.

The plaintiffs called Joseph L. McConnell, who testified :—

" I drew the deeds which have been read ; I wrote the deeds at the instance of Andrew Lantz, Sr. ; I think he gave me the same instructions for the filling up of both deeds ; I cannot tell how I came to leave out the words ' for the love and affection he hath for his grandchildren ;' I cannot tell why I left it out ; I am satisfied I received the same instructions from the old man ; cannot say why I left it out, or that it was an accident or a mistake that I left it out. We first talked of leaving it in trust to somebody for them (the children of Andrew Lantz, Jr.), he named them over or counted them over ; he then said he did not know how many might be born, he wanted the children all equal ; he called them his grandchildren, Andrew's children and his heirs, more often Andrew's children, and when he thought more might be born, he called them Andrew's heirs ; as near as I can recollect, he told me how to fill up the deeds, and I cannot distinguish, but I know he mentioned heirs, grandchildren and Andrew's children ; he told me to fill up the deeds in that way ; he said he was satisfied

[Huss v. Morris.]

there would be more born; said he wanted to make the deeds legal; I am satisfied the instructions for both deeds were the same, but I don't know how it happened I made them different; he said he wanted to make the deeds legal. I think I drew the deed last given in evidence, first."

On cross-examination he said:—"The word heirs was put in to avoid the difficulty about the after-born children; he directed it to be put in that way, for this reason; I read over the deeds; I am not certain that he signed them till he went to acknowledge them; he had the deeds in his own possession till after they were acknowledged."

Andrew Lantz, Sr., by his will, dated September 5th 1857, devised all his lands not already conveyed away, to his five children, share and share alike.

The youngest child of Andrew Lantz, Jr., was born after the date and acknowledgment of the deed.

Andrew Lantz, Sr., died in 1859.

Andrew Lantz, Jr., died in 1862.

The plaintiff's points were:—

1. From the deeds in evidence and the testimony of McConnell, the jury may find that Andrew Lantz, Sr., instructed McConnell to describe the grantees in the deed for the land in dispute exactly as in the other deed, and that the words "natural love and affection he hath for his grandchildren," were left out of the deed conveying the land in dispute by the accident or mistake of the said McConnell, when he drew the deed, and if they should so find the facts, then the deed is a sufficient conveyance in law and equity, to the plaintiffs, and they are entitled to recover, as the defendants admit the title to have been in the grantor.

2. If the jury believe the evidence of Joseph L. McConnell, that he wrote them (the deeds) at the instance of Andrew Lantz, Sr., under the following instructions, viz.: "He (Andrew Lantz, Sr.), gave me the same instructions for filling up both deeds. I drew the small deed first, and both deeds at the same time"—"named over Andrew's children, his grandchildren"—the deeds being between the same parties, written at the same time, relating to the same subject-matter, and from grandfather to grandchildren, are to be treated as one conveyance, and as if the word "grandchildren" were in the deed for the land in dispute, and the plaintiffs are entitled to recover.

3. If the court should charge against the plaintiffs on the foregoing points, then they are respectfully requested to charge as follows: that as both plaintiffs and defendant claim title under Andrew Lantz, Sr., and the plaintiffs having shown that they are the children and heirs of Andrew Lantz, Jr., they are entitled to recover under the deeds given in evidence.

The court charged:—

13 P. F. SMITH—24

[Huss *v.* Morris.]

"This is an ejectment for the same land, same parties and title which we find reported and decided in 10 Wright 200. We see plainly that the authority of that case is questioned and doubted, but it does not follow from this that it is or ever will be over-ruled, and as it is decisive in the very case trying, we must adhere to it.

"The plaintiff endeavored to show that the scrivener departed from the instructions of the grantor in drawing the deed, that this was an accidental omission and mistake, and that in equity he has a right to show this by parol evidence, and have the deed read or reformed to correspond with these omitted instructions. We recognise their right to do so, and have permitted them to make the attempt, and we have also allowed them to read another deed from the same grantor to those who are alleged to be the same grantees, and which was executed on the same day, and written immediately before the deed upon which plaintiff's title rests ; and this for the purpose of explaining the instructions and corroborat-ing the witness. The late Chief Justice in 11 Casey 215, said, 'we have got far away from the rule that is laid down in Starkie on Evidence, part 4, 1009, that parol evidence is inadmissible for the purpose of altering the legal operation of an instrument ;' so that under the relaxed rules of evidence on this subject, we have no difficulty in allowing the introduction of the evidence ; but seeing that these rigid rules of evidence have been changed in some measure (for in allowing the evidence we are exercising the functions of a chancellor), we consider it our duty, when exercising these equitable powers, to hold the matter well in hand, and not commit the case to a jury, unless the offer is well made out. We ought to leave nothing of substance to mere inference, conjecture or supposition, and whenever the evidence amounts to nothing more, to withdraw the decision from the jury. We shall do so here, and decide that it is not sufficiently proven by Mr. McConnell, the scrivener (and the only witness on the subject-matter of accidental omission and mistake), that there was such omission and mistake in drawing the deed, as is alleged. Here the grantor knew his grandchildren, could name and number them, but the difficulty in his mind was that he supposed his son Andrew might have more children, and he concluded, as he wished them all to be equal, that this was the proper mode of designating them. The witness says, 'I am satisfied that the instructions for both deeds were the same, but I don't know how it happened that I made them different ; he said he wanted to make the deeds legal. I think I drew the deed last given in evidence, first.' Then on his cross-examination he says : 'The word "heirs" was put in to avoid the difficulty about the after-born children ; he directed it to be put in that way, for this reason. I read over the deeds to him.' After such evidence, it is the duty of the court to say that

[*Huss v. Morris.*]

the offer is not proved, and that there is no such evidence as would allow the correction of this deed. As to the intent of the grantor, there can be but one opinion. By the enforcement of this technical rule it is clearly frustrated.

" This is our answer to the 1st and 2d points.

" As to the 3d point we say, if we comprehend its import, that this action is not brought by the plaintiffs as tenants in common or coparceners for undivided parts, against co-tenants and co-parceners, and therefore if not entitled to recover the whole they cannot recover undivided parts of the whole. This point we think is rather an afterthought, as we have no recollection that the children of Andrew Lantz, Sr, were named. Plaintiffs except."

The verdict was for the defendants.

The plaintiffs took a writ of error and assigned the answers to their points for error.

*A. A. Purman* (with whom was *N. Ewing*), for plaintiffs in error.—The second deed was a sufficient conveyance: Huss *v.* Stephens, 1 P. F. Smith 282; 4 Id. 25. There being both written and parol evidence, the question of mistake was for the jury: Sidwell *v.* Evans, 1 Penna. R. 386; Welsh *v.* Dusar, 3 Binn. 329; Dennison *v.* Wertz, 7 S. & R. 172. A deed may be reformed by parol evidence: Chalfant *v.* Williams, 11 Casey 212; Starkie on Ev., pt. 4, p. 1009; Bank *v.* Fordyce, 9 Barr 279; Miller *v.* Henderson, 10 S. & R. 290; 1 Greenl. Ev., § 296, a; Rearich *v.* Swinehart, 1 Jones 238; Musselman *v.* Stoner, 7 Casey 270. Additional consideration may be proved by parol: Jack *v.* Daugherty, 3 Watts 151; Lewis *v.* Brewster, 7 P. F. Smith 410. Absolute deeds may be shown to be mortgages: Reitenbaugh *v.* Ludwick, 7 Casey 131; Buckley's Appeal, 12 Wright 496; County of Blair *v.* Royer, 7 Id. 146; Edwards *v.* Trumbull, 14 Id. 509; Kunkle *v.* Wolfersberger, 6 Watts 130; Jacques *v.* Weeks, 7 Watts 261. The two deeds in evidence were together intended to be the fulfilment of the same original purpose and should be construed together: Kerr *v.* Gilmore, 6 Watts 406. Intention may be discovered from extraneous circumstances: Wharf *v.* Howell, 5 Binn. 503; and these deeds may be construed as one: Jackson *v.* Dunsbagh, 1 Johnson's Cases 91. Deeds are to be construed so as to effectuate the intention of the parties, and where the intent to pass land one way or another is apparent the conveyance may be good either way: Means *v.* Presbyterian Church, 3 W. & S. 303; Bryan *v.* Bradley, 16 Conn. 474. The question is whether the intent is sufficiently evinced by the words of the deed and the circumstances at the time of the execution. When words may have two meanings, that which will effectuate the intention of the parties will be adopted: Bagshaw *v.* Spencer, 1 Vesey 147; Lisle *v.* Grey, 1 Ld. Raymond 315; Brooking *v.*

[Huss v. Morris.]

White, 2 Wm. Bl. 1016; Burchett v. Durdant, Carthew 154; Brown v. Barkham, Prec. in Ch. 461; Beaumont v. Long, Fortescue 18; Walker v. Snow, Palmer 359; Doe v. Perratt, 5 B. & C. 48. The deed here acknowledged and recorded has the same effect as livery: Murphy v. Hubert, 4 Harris 59; Sprague v. Woods, 4 W. & S. 194. The deed may be considered a covenant to stand seised, there being both a valuable and a good consideration: 4 Cruise's Dig., tit. 32, ch. 12, 33; Sprague v. Wood, *supra;* Coke Litt. 271, Butler's note, 231. The construction of deeds must be liberal and according to the popular meaning of the words describing the grantees: Broom's Leg. Max. 226; Sheppard's Touchstone 234–237.

*J. Veech* and *C. A. Black* (with whom were *Wyly & Buchanan*), for defendants in error.—The deed is void for uncertainty: Morris v. Stephens, 10 Wright 200. The evidence of McConnell was insufficient to prove mistake: Morris v. Stephens, *supra;* Huss v. Stephens, 1 P. F. Smith 282. One deed could not interpret the other: 1 Greenl. Ev. 283. The presumption is that "heirs" was used in legal sense: Guthrie's Appeal, 1 Wright 9; Criswell's Appeal, 5 Id. 290; Ellmaker v. Ellmaker, 4 Watts 89; Hileman v. Bouslaugh, 1 Harris 344; Auman v. Auman, 9 Id. 343; Hall v. Leonard, 1 Pick. 27; 2 Hilliard on Real Property 234; Burton on Real Property, §§ 442, 516, 529; Coke Litt. 231 a, 280 b; Jackson v. Tibbits, 9 Cowen 241.

. The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—It is the well-settled law of this state that the mistake of a scrivener in preparing a deed or other writing, may be shown by parol evidence, and the instrument reformed accordingly. It is but an exercise of the equity powers inherent in all our courts, from the earliest days of the province. Many of the cases are complicated with fraud either at the time of the execution of the writing or in subsequently setting it up contrary to the agreement and understanding of the parties. The cases are too numerous to cite, but I will content myself with referring to a few in which the element of fraud had no place: Hamilton v. Asslin, 14 S. & R. 448; Gower v. Sterner, 2 Whart. 75; Farmers' and Drovers' Bank v. Fordyce, 1 Barr 456; Chalfant v. Williams, 11 Casey 212. The English cases are all examined, with his usual ability, by Chancellor Kent in Gillespie v. Moon, 2 Johns. Ch. 585, and the rule fully established that equity relieves against a mistake as well as against fraud. In Watts v. Bullas, 1 P. Wms. 60, where I. S. made a voluntary conveyance to his brother by the half blood, which was void and defective at law, Lord Keeper Wright was of opinion that as the consideration of blood would at common law raise an use, so would this imperfect conveyance raise

a trust in respect of the consideration of blood, and consequently ought to be made good in equity, and in the same case the Master of the Rolls is reported to have said that a devise of a copyhold without a surrender ought to be made good for grandchildren as well as children, an opinion concurred in by Lord Harcourt i' Freestone v. Kant, 1 P. Wms. 61, n. Some doubts have bee. thrown upon the authority of this case because later equity cases have confined the interference of that court in supplying defects in the execution of powers to creditors, wife and children. But Chancellor Kent cites Watts v. Bullas with apparent approbation, 2 Johns. Ch. 599; and our courts certainly will not distinguish between children and grandchildren in the exercise of the equitable power of correcting a plain mistake in a conveyance intended for their benefit, especially when it is for the purpose of rendering valid and effectual what would otherwise be void for informality. The natural affection of grandparents is generally as strong as that of parents, and the Act of Assembly of June 13th 1836, § 28, Pamph. L. 547, has recognised the closeness of this relation by imposing upon the parties the reciprocal obligation of maintenance.

The learned judge in the court below did not deny this, for he admitted the evidence offered to show the mistake: the deed for the other farm and the testimony of the scrivener; but he thought, after having heard it, that it was not enough to be submitted to the jury. In determining whether he was right in this we must consider what was the mistake alleged. It was not a mistake in the grantees. It may be admitted that the evidence of any mistake as to them failed entirely. But the attempt was to show that the words "said heirs" had been introduced into the consideration clause for the words "his grandchildren" by the mistake of the scrivener. Both deeds were drawn by him at the same time, and, as he testified, under the same instructions. When we look at the expression of the consideration it would scarcely seem to need the testimony of the scrivener to prove that it was a mistake. Mistakes are sometimes so apparent on the face of an instrument that the courts will construe the instrument as it ought to have been drawn. What natural love and affection could Andrew Lantz feel for the heirs of his son, if these words are to be construed in their technical sense? It is very plain that he meant children, though a court might not feel itself in this case at liberty to have said so without some extrinsic evidence. No use could be raised on such a consideration. The words include not only the whole line of the son's descendants but his remote collaterals, many of whom might not even be of the blood of the grantor. It would not require much evidence to satisfy the mind that "his said heirs" was a mistake in that place. Free as the courts have been in admitting parol evidence to correct mistakes, that liberality has been more

[Huss *v.* Morris.]

particularly exercised in reference to the statement of the consideration not only in correcting what is wrong but in inserting what has been omitted : White *v.* Weeks, 1 Penna. R. 486 ; Jack *v.* Daugherty, 3 Watts 151 ; Hayden *v.* Mentzer, 10 S. & R. 329 ; Strawbridge *v.* Cartledge, 7 W. & S. 394. It is plain, then, upon the testimony of the scrivener, that when, in explaining his intentions, Andrew Lantz spoke of his grandchildren—named them over and counted them—and called them Andrew's heirs, he referred to them as the objects of his love and affection, which was the moving cause of the gift he was about to make. This is no way lessened by his insisting that the grant should be made to the heirs of his son, because he thought that word necessary to include those who might thereafter be born as well as those then living. We think the learned judge was in error in taking the case from the jury. As a chancellor it ought to have satisfied him if the jury believed it. If the consideration clause in the deed is reformed so as to read " for the natural love and affection he hath for his grandchildren," it would be a valid conveyance, according to Huss *v.* Stephens, 1 P. F. Smith 282, and Stephens *v.* Huss, 4 Id. 25. The only error assigned is to the charge of the court in withdrawing the evidence of mistake from the jury, and we are not, therefore, required to re-examine the grounds of the original decision upon the deed now in question in Morris *v.* Stephens, 10 Wright 200.

Judgment reversed, and *venire facias de novo* awarded.