# McCrum *v.* Love, Appellant.

*Contract—Building contract—Bond—Principal and surety.*

1. Where a building contractor obligates himself to furnish "a satisfactory bond of the full amount of the contract," and the condition of the bond furnished is, that if the obligors shall pay or cause to be paid unto the owner a sum stated "for the completion of a building, as per plans and specifications and articles of agreement for" the owner in a borough specified "without fraud or further delay, then this obligation to be void," the owner may, in an action upon the bond, introduce oral testimony to the effect that the agreement was that the bond was to furnish indemnity to the owner against claims of subcontractors and material men, and was not given merely to insure the completion of the building.

2. In such a case the owner may recover not only the amount of liens filed against the building, but also amounts which he had voluntarily paid to material men, without waiting for them to file liens, where it appears that such payments were made on a written order from the contractor in which it was stated that the amounts were. due, and

that the owner would have to take care of them as the contractor was without money so to do.

3. A provision in such a contract empowering the owner to retain a sufficient amount out of the contract price to indemnify himself against liens or claims, but without any provision requiring him so to do, is in relief of the owner, and is not intended for the protection of the contractor's surety. If the owner chooses to pay amounts due on the contract to subcontractors or material men, he may do so without waiting for claims or liens to be actually filed.

Argued April 30, 1914. Appeal, No. 149, April T., 1914, by defendant, from judgment of C. P. Allegheny Co., Oct. T., 1908, No. 578, for plaintiff on case tried by the court without a jury in suit of Robert Y. McCrum v. J. L. Love and George L. Walter Lumber Company. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit on a bond.

From the record it appeared that the case was originally tried before FRAZER, P. J., and a jury. The jury brought in a special verdict, but this not being in proper form was set aside, and a new trial granted. The parties then agreed that the case should be tried by the court without a jury under the provisions of the act of April 22, 1874.

FRAZER, P. J., found the facts to be as follows:

1. On August 8, 1907, the defendant, J. L. Love, a building contractor, entered into a contract in writing to construct and erect a dwelling house in the borough of Aspinwall for plaintiff, for the sum of $8,707, which sum was payable at different periods as the building progressed.

2. The contract required the building to be erected in accordance with plans and specifications prepared by F. C. Sauer, architect, and included the usual stipulations embraced in what is known as "the uniform contract," adopted by the American Institute of Archi-

tects. In addition to providing the manner in which the work was to be done, the times at which payments were to be made on account, a clause in reference to retention of money to meet liens, etc., it was provided that "a satisfactory bond of the full amount of the contract shall be furnished" by the contractor.

3. A bond dated September 20, 1907, signed by J. L. Love, S. J. Saint and The George L. Walter Lumber Company, was delivered by the contractor to plaintiff, the condition of which is as follows: "That if the above bounden J. L. Love, S. J. Saint and George L. Walter Lumber Company, their heirs, executors, administrators, or any of them, shall and do well and truly pay or cause to be paid unto the above named Robert Y. McCrum, his executors, administrators or assigns, the just and full sum of $8,700 (Eighty-seven Hundred Dollars), for the completion of a building as per plans and specifications and articles of agreement for Robert Y. McCrum in the Borough of Aspinwall, Pennsylvania, without fraud or further delay, then this obligation to be void and of none effect; otherwise to be and remain in full force and virtue."

4. On January 1, 1908, the building referred to in the first finding of facts was plastered, and plaintiff had paid the contractor $6,000 in accordance with the terms of the contract. Subsequent to January 1, 1908, no payments were made by plaintiff to the contractor direct, but there were mutual debits and credits, as to which there is no dispute, so that upon the completion of the building there remained in plaintiff's hands the sum of $2,605.33 of the contract price.

5. The building was completed about May 1, 1908, all work and material being contracted for by the contractor and the work of erection and construction done and performed by him, with the exception of the removal of the rubbish and the grading of the premises about the building. The specifications required the contractor to remove all rubbish and grade the premises.

Upon the contractor's failure to do this work, after notice, it was done by plaintiff under the direction of the architect.

6. On May 5, 1908, in response to plaintiff's request for a settlement, the contractor sent plaintiff the following letter, viz.:

"ASPINWALL, May 5, 1908.

"R. Y. McCrum.

· "Dear Sir:

"Enclosed you will find a list of the sub-contractors on your house, and the amounts still due them, which you will have to take care of, as I have not got the money. I missed several items when I gave you my bid, so I am this much shy.

"Very respectfully,
"J. L. LOVE."

This letter was the first knowledge McCrum had of Love's inability to fully perform his contract. [The amount due the subcontractors named in the list above referred to aggregated the sum of $3,917.28.] [1]

7. The contractor gave his subcontractors orders on plaintiff for payment of the amounts due them, and on June 20, 1908, plaintiff paid on these orders $2,593.05, out of the balance of the contract price remaining in his hands.

8. Previous to the time when plaintiff paid out the sum of $2,593.05 above referred to, each of the persons paid had served upon plaintiff a notice of intention to file a lien against the premises for his claims, such notices being accompanied by sworn statements of the amounts due. These claims were investigated by the architect and found to be correct. Each claimant had a right under the law to file a lien for the amount of his claim.

9. After June 20, 1908, three of Love's subcontractors who had not been paid, filed liens against plaintiff's premises for labor and materials furnished to the con-

tractor and used in the erection and construction of plaintiff's building, which liens plaintiff was compelled to pay, and did pay prior to the bringing of this suit. These liens and costs amount to $1,032.26. Plaintiff also paid $18.00 to have the rubbish removed and the premises graded according to the requirements of the specifications. After the payments made by plaintiff to subcontractors on June 20, 1908, there remained in plaintiff's hands $12.28 of the contract price. Plaintiff has paid $1,037.72 over and above the contract price for the building, as a result of the failure of the contractor to comply with the plans and specifications of the contract of August 8, 1907.

10. S. J. Saint, one of the obligors in the bond sued upon, died shortly before this case was called for trial, and thereupon plaintiff filed a suggestion of his death, and the case was tried against the surviving defendants.

The court entered judgment for plaintiff for $1,374.97.

*Error assigned* among others was the judgment of the court.

*Donald Thompson*, with him *Blakeley & Calvert*, for appellants.—The plaintiff cannot recover under art. IX of the Building Agreement: Equitable Trust Co. v. National Surety Co., 214 Pa. 159; Fels v. Massachusetts B. & I. Co., 48 Pa. Superior Ct. 27; Hutchinson v. Woodwell, 107 Pa. 509; Sonnefeld v. Brennan, 17 Pa. Dist. Rep. 267; Alexandria Water Co. v. Nat. Surety Co., 225 Pa. 1; Chester City, etc., Church v. Conlin, 11 Pa. Superior Ct. 413.

*James G. Marks*, for appellee, cited: Miller v. Eccles, 155 Pa. 36; Philadelphia & Reading Ry. Co. v. Knight, 124 Pa. 58.

OPINION BY HENDERSON, J., October 12, 1914:

One of the defendants, J. L. Love, entered into a con-

tract in writing with the plaintiff to build a house for the latter. The obligation of the contractor was to provide all the materials and perform all the work for the erection and completion of a brick dwelling house in consideration for which work and the material used therein the plaintiff agreed to pay $8,707 at the times stipulated, in the contract. The contractor obligated himself to furnish "a satisfactory bond of the full amount of contract," and this action was brought on the bond so given to recover money which the plaintiff was compelled to pay in discharge of certain liens entered against the property which the contractor failed to discharge. The condition in the bond was that if the obligors "shall and do well and truly pay or cause to be paid unto the above named Robert Y. McCrum, his executors, administrators or assigns, the just and full sum of $8,700.00, eighty-seven hundred dollars, for the completion of a building as per plans and specifications and Article of Agreement for Robert Y. McCrum in the borough of Aspinwall, Pa., without fraud or further delay, then this obligation to be void," etc. This clearly did not express the intention of the parties, and evidence was offered to show the purpose for which the bond was given the plaintiff's allegation being that it was given to indemnify him against loss through failure of the contractor to carry out his agreement. The appellant alleged that it was given only to insure the completion of the building and that no financial obligation of the sureties was to be incurred. Under the authority of Huss v. Morris, 63 Pa. 367; George v. Tate, 102 U. S. 564, and other cases the learned trial judge held that resort should be made to oral testimony to ascertain what the agreement of the parties was and found as a fact that the bond was to furnish indemnity to the plaintiff against claims of subcontractors and material men. This conclusion was well founded on the evidence. That the contractor was bound to provide and pay for the materials and labor entering into the house is not

open to debate. The consideration named covered the whole cost of the completed structure, and this the contractor expressly agreed to furnish. The bond recites the contract between the parties for the completion of the building according to the plans and specifications and article of agreement. Undoubtedly the signers of the bond did not understand that they were to pay the owner of the building $8,700 for its completion according to this contract. It was intended to be the "satisfactory bond" covering the contractor's obligation which the plaintiff was entitled to have. There could have been no other reasonable object in providing the bond than to give security to the plaintiff that if the contractor did not perform his agreement the sureties would do so. The bond was prepared by the vice-president of the defendant company, and the president by whom the bond was executed testified that his understanding was that if the contractor failed to complete the building through sickness, death or other cause the appellant was obligated to complete it according to the plans and specifications. The appellant's contention that there was to be no financial obligation is inconsistent with the terms of the paper, the purpose for which the bond was to be given as called for by the contract and the situation of the parties with reference to the transaction. Such a bond would afford no security to the owner of the premises with respect to the very things against which it was important that he be protected.

It is conceded that the claims which the plaintiff paid were liens against his property and that the bond as reformed by the court covered such claims. Objection is, however, made to the plaintiff's demand for the reason that he voluntarily paid to other material men $2,593.05 out of the contract price on June 20, 1908, without waiting until liens were filed by these claimants. These payments were made on a written order from the contractor dated May 5, 1908, in which order the plaintiff was notified that the amounts were due the several

creditors and that the plaintiff would have to take care of them as the contractor was without money so to do. These payments were not a departure from the contract. The plaintiff was bound to pay the amount for which he had obligated himself if the contractor furnished the material and did the work. The material and labor covered by the payments made on June 20, was performance pro tanto by the contractor and as the building was completed at that time payments were due to him subject to the condition that he protect the owner from claims or liens. The ninth article of the agreement provided that if at any time there should be "evidence of any lien or claim for which if established the owner of said premises might become liable and which is chargeable to the contractor the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made the Contractor shall refund to the Owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the Contract default." While this provision of the contract empowered the owner to retain a sufficient amount out of the contract price to indemnify him against liens or claims there was no provision of the contract which required him so to do. That part of the agreement was in relief of the owner and was not intended to be protection to the sureties. The contract contemplated payment as the work progressed, and one of the objects in providing for security was to enable the contractor to obtain payments with which to purchase material and pay for labor. The contract contains no provision which bound the plaintiff to retain the amount due on the contract until it could be determined that there were no claims or liens with which he might be charged. There would be little use for a bond under such circumstances if the owner of the premises

must retain the amounts due on the contract until the period had elapsed within which liens might be filed by subcontractors or material men. The case of Fels & Co. v. Mass. Bond. and Ins. Co., 48 Pa. Superior Ct. 27, rests on a different state of facts. There the agreement between the plaintiffs and the contractor required the plaintiffs to retain a certain percentage of the compensation to be received for laying the bricks, this retained percentage to be paid when the contract was completed. The contractor after having prosecuted the work for a length of time abandoned it. The plaintiffs, however, paid him in full for the work he had done including the twenty-five cents per 1,000 brick which was not payable until the work was completed. This was an anticipatory payment not in harmony with but contrary to the express terms of the contract and against the manifest interest of the surety. The retained earnings were intended as a fund to insure performance of the contract, and this incentive was removed when advance payments were made. The case of Alexandria Water Co. v. National Surety Company, 225 Pa. 1, is an authority in support of the judgment. The claims paid on June 20 were not disputed, they were admitted to be correct by the contractor and architect in charge of the work and the payment of them was performance of the contract to that extent by the plaintiff.

Under the contract, therefore, the liability of the plaintiff is established and the judgment is affirmed.