*The Chancellor.
The bill is brought to rectify a mistake in the conveyance to the defendant, which, by an error in the description of the land, conveyed the whole lot, or 250 acres, instead of 200 acres, parcel of the same. The "mistake is positively denied in the answer ; and it is objected, that parol proof of the mistake is inadmissible, in opposition to the plain language of the deed, and especially, in opposition to the defendant’s answer.
[ * 594 ]
1. Assuming^ the parol testimony to be competent, the fact oft he mistake, on thé parFof the grantor! is made_out to ..my entire satisfaction. There are circumstances, independent of the parol proof, that afford pretty strong presumptive evidence of mistake. The deed to Mrs. Mann, in 1799, after mentioning the number and describing the boundaries of the lot, adds, that it contains 250 acres, more or less. The defendant lived on part of the lot, and other tenants occupied other parts of it, at the time of the purchase by the defendant, and the number of acres was a fact likely to be known by the several persons interested in the lot. It is not pretended in the case, that the lot did not contain 250 acres, and when the defendant applied to purchase, it is extremely probable that he and Mrs. Mann equally well knew so important and so notorious a fact, as the number of actual or reputed acres. But the agreement for the purchase, signed by both of them, on the day of the date of the deed, stated that Mrs. Mann had agreed to convey to the defendant, a tract of land containing 200 acres; and the deed itself, which follows, in the description of the boundaries, the words of the former deed to Mrs. Mann, adds, containing 2d0 acres, more or less. Why did it vary, in this particular, from the former deed, and not follow the description throughout ? This was a circumstance which would probably attract attention, as soon as the other parts of the description. A purchaser being on the lot, and well acquainted with it, would ordinarily attach much importance to a declaration of the *quantity of acres. If the whole lot was intended to have been sold, it is inconceivable why that part of the description, in the former deed, should have been varied in so great a degree, as from 250 to 200 acres, and why the previous agreement, in writing, should speak of a tract' of land of 200 acres, instead of the lot itself, well known to contain 250 acres.
*594 The two receipts for rents, dated the 8th and 9th of June, 1804, do not appear to me to afford much inference, one ■ way or the other. The first receipt was for the payment of the arrears due from the defendant for his 100 acres, and the second for arrears from the other occupants. It says, in full for rent for lot 57, occupied, by defendant. This was a loose, and very inaccurate expression, and it is difficult to know what was meant. These receipts appear to me to be of no moment in the case.
But if we resort to the parol proof, it is clear and overwhelming, when connected with the inference from the documents, that Mrs. Mann did not intend to sell, and that the defendant did not intend to buy, more than 200 acres, and that the 50 acres occupied by Cable were not included in the bargain.
[ * 595 ]
Elizabeth Crossby was present when the parties were making the contract, and she remembers that Mrs. Mann was positive and absolute in her refusal to sell more than 200 acres, or to sell the part occupied by Cable, and that she assigned as a reason, that Cable held the land under lease. We have also the testimony of several witnesses residing near the land, and who had been long and well acquainted with the lot and with the defendant, who testify to the great value of Cable’s part in 1804, and to the confessions of the defendant, after his return from making the purchase at New- York, that he purchased 200 acres only, and did not purchase Cable’s part of 50 acres, but that he found, after-wards, that his deed included, the whole lot. The witnesses, who testify to these confessions and *declarations of the defendant, are Josiah Corbet, Jonathan Wood, David Brown, Caleb Brown, Daniel Case, and Jonathan Cable. These six witnesses are all unimpeached ; most of them are neighbors to the defendant, and strangers to the plaintiffs, and it is impossible not to give full credit to such a mass of testimony all going to one point. In addition to this, we have the testimony of David Austin, who was in New- York, with the defendant, in June, 1804, and he understood from him, at the time, that his business was to purchase 200 acres of the lot. It is also proved by Cable, that the defendant told him, a short time before the purchase, that he was going to purchase 200 acres of the lot.
Some of these witnesses falsify the answer in other parts, and prove it untrue as to a matter of fact within the defendant’s own knowledge. The answer says, that immediately on receiving the deed, the possession of the whole lot was delivered to him by the tenants, all of whom either surrendered their possession to him, or took deeds under him, and *595 that he offered deeds to all the tenants, and particularly to Jonathan Cable, who refused a deed, and voluntarily surrendered his possession to the defendant. Cable not only colitradicts the fact of any such offer to, or surrender by liim, but it is proved, by Charles and John Blowers, that the de fendant entered forcibly, and took possession of the mill belonging to Cable.
[ * 596 ]
2. It is unnecessary to enter more minutely into the parol proof of the fact of the mistake. On that point there is no room for doubt. The only doubt with me is, whether the defendant was not conscious of the error in the deed, at the time he received it and executed the mortgage, and whether the deed was not accepted by him in fraud, or with a voluntary suppression of the truth. That fraudulent views very early arose in his mind, is abundantly proved. He asked Corbet, (a witness,) if he could not so *run the line as to save the lower mill seat to himself; and he told David Broum that he meant to take counsel, and if he found he coul.l hold the whole lot, he intended to do so, as it was not his fault that the deed was made as it was.
It would be a great defect in what Lord Eldon terms the moral jurisdiction of the Court, if there was no relief for such a case. Suppose Mrs. Mann had applied for relief, instantly, on discovery of the mistake, and immediately after the delivery of the deed ; was there no power in the whole administration of justice competent to help her? It has been the constant language of the Courts of equity, that parties can have relief in a contract founded in mistake, as well as in fraud. The rule in the Courts of law is, that the written instrument does, in contemplation of law, contain the true agreement of the parties, and that the writing furnishes better evidence of the sense of the parties, than any that can be supplied by parol. But equity has a broader jurisdiction, and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself. “ It must be an essential ingredient,” says Lord Thurlow, (1 Bro. 350.) “ to any relief under this head, that it should be on an accident perfectly distinct from the sense of the instrument.” I have looked into most, if not all, of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract, in writing, founded in mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively, by bill, or as a defence.
*596 [ * 597 ]
*595 In Henkle v. The Royal Exchange Assurance Company, (1 *596 Vesey, 317.) Lord Chancellor Hardwicke said, the Court had jurisdiction to relieve, in respect of a plain mistake in contracts in writing, as well as against frauds in contracts. *The same doctrine appears to have been held by him in Simpson v. Vaughan, and in Langley v. Brown; (2 Atk. 31. 203.) and by Lord Thurlow, in Taylor v. Radd. (cited in 3 Bro. 454. 5 Vesey, 595.) So, again, in Baker v. Paine, (1 Vesey, 456.) Lord Hardwicke observed, “ How can a mistake in an agreement be proved but by parol evidence ? It is not read to contradict the face of the instrument, but to prove a mistake therein.” In Irnham v. Child, (1 Bro. 94.) Lord Thurlow said, that a mistake creating an equity dehors the deed, should be proved as much to the satisfaction of the Court, as if it were admitted ; and, afterwards, in Shelburne v. Inchiquin, (1 Bro. 341. 344.) he held that parol proof was not incompetent to prove that words taken down in writing were, by mistake, contrary to the concurrent testimony of all parties. Lastly, it was said by Lord Eldon, in the case of The Marquis of Townsend v. Stangroom, (6 Vesey, 328.) that it would be very singular, if the jurisdiction of the Court should not be capable of being applied to cases of mistake and surprise, as well as of fraud. He owned that those who undertook to rectify an agreement, by showing a mistake, undertook a task of great difficulty, but he could not say the evidence was incompetent, though it was not possible to reconcile all the cases on this question.
[ * 598 ]
The cases concur in the strictness and difficulty of the proof, but still they all admit it to be competent, and the only question is, Does it satisfy the mind of the Court ? Lord Hardwicke said, it must be proper proof, and the strongest proof possible; and Lord 'Thurlow, that it must be strong, irrefragable proof; and, he said, the difficulty of the proof was so groat, that there was no instance of its prevailing against a party insisting that there is no mistake. We are now considering the question of the competency, and not of the amount of the parol proof, and it appears to be the steady language of the English chancery, for the last seventy years, and of all the compilers of *the doctrines of that Court, that a party may be admitted to show, by parol proof, a mistake, as well as fraud, in the execution of a deed or other writing.
We will next look into the cases for the application of this principle.
On bills for a specific performance of an agreement in writing, the defendant has frequently been admitted to show, l>y parol proof, a mistake in such agreement, and by that means, to destroy the equity of the bill. The relief on such bills is said to rest in discretion, and if the defendant can show *598 surprise or mistake, it makes the special performance of such an agreement unjust. The cases of Joynes v. Statham, (3 Atk. 388.) The Marquis of Townsend v. Stangroom, (6 Vesey, 328.) Rambottom v. Gorden, (1 Vesey & Beames, 165.) Clowes v. Higginson, (1 Vesey & Beames, 524.) and Flood v. Finlay, (2 Ball & Beatty, 9.) are all to this point. But this is only one class of cases: there is another class in which the object of the parol proof is to correct mistakes in bonds, deeds of settlements, mortgages, and, generally, in all contracts and agreements, and where the proof is introduced to aid the plaintiff in his bill, as well as to aid the defendant in his defence.
[ * 599 ]
Whether such proof be admissible on the part of a plaintiff who seeks specific performance of an agreement in writing, and at the same time seeks to vary it by parol proof, has been made a question. Lord Hardwicke, in Joynes v. Statham, seemed to think it might be done; but such proof was rejected by the master of the rolls, in Woollam v. Hearn; (7 Vesey, 211.) and again in Higginson v. Clowes; (15 Vesey, 516.) and when Lord Redesdale said, in Clinan v. Cooke, (1 Schoales & Lefroy, 39.) that he could find no decision in which a plaintiff had been permitted to show an omission in a written agreement, by mistake or fraud, he must be understood to refer to the cases of bills for a specific performance of an agreement, which *was the case then before him. There are numerous instances in which the plaintiff has claimed and obtained relief, by showing a mistake in the agreement; and there would be a most deplorable failure of justice, if the mistakes could only be shown and corrected when set up by a defendant to rebut an equity.
In Henkle v. The Royal Exchange Assurance Company, the bill was brought by the plaintiff to have a policy rectified, so as to charge the defendants after a loss, and when, without such correction, they would not be charged. The parol proof was admitted, and because the proof was insufficient and uncertain, the bill was dismissed, though without costs. In Baker v. Paine, the plaintiff sought, by bill, to be relieved from a mistake in articles of agreement, containing a bargain and sale of goods, and the parol proof was admitted, though objected to, and the articles were rectified. Again, in Watts v. Bullas, (1 P. Wms. 60.) a voluntary defective conveyance of land was made good, on a bill by a person holding under it, against the heir of the grantor; and in Simpson v. Vaughan, (2 Atk. 31.) and Crosby v. Middleton, (Prec. in Ch. 309.) and Burn v. Burn, (3 Vesey, 573.) a mistake in a bond was shown by parol proof, on the part of the plaintiffs, and the bond amended, though in two of these *599 cases the obligor was dead, and in the third, the lapse of time had been very great, and the party, against whom the correction was allowed, was a surety. So, in The South Sea Company v. D’Oliffe, (cited in 2 Vesey, 377. and 5 Vesey, 601.) there was a mistake in a bond, given by way of security, by inserting six instead of two months, and the party was relieved, upon evidence of mere verbal communications.
[ * 600 ]
The cases of Randal v. Randal, (2 P. Wms. 464.) of Cocking v. Pratt, (1 Vesey, 400.) of Rogers v. Earl, (Dickens, 294.) and of Barstow v. Kilvington, (5 Vesey, 593.) were bills filed to rectify mistakes in settlements; and in all of them proof aliunde was admitted, though the admission *was resisted ; and, in two of the cases, by the defendant, who claimed as heir against the mistake.
Defects in mortgages, contrary to the intention of the parties, have also been made good against subsequent judgment creditors, who came in under the party, who was bound in conscience to correct the mistake. (2 Vern. 565. 609. 1 Eq. Cas. Abr. 320. pl. 1. 1 P. Wms. 279.)
*600 [ * 601 ]
*599 It has been said, that there was no instance of a mistake corrected in favor of a plaintiff, against the answer of the defendant, denying the fact of mistake. But I do not understand any of the dicta on this point to mean, that the answer, denying the mistake, shuts out the parol proof, and renders relief unattainable, however strong that proof may be. The observations of Lord Eldon,- in the case of The Marquis of Townsend v. Stangroom, certainly imply no more, than that the answer is entitled to weight, in opposition to \ the parorprooffTnit it certainly can be overcome by such i proof. "Tn that very case, the answer denied the mistake, yet I parol proof was held admissible. The lord chancellor only said, that the evidence must be taken with due regard leing had to the answer, and that it must not be forgotten, to what extent the answer of one of the parties admits or denies the intention.. Lord T'nurlow said, that there was so much difficulty in establishing the mistake, to the entire satisfaction of the Court, that it had never prevailed agaipst the answer denying the mistake. I am not inclined, on light grounds, to contradict such high authority, but, as I read the case of Pitcairn v. Ogbourne, (2 Vesey, 375.) before Sir John Strange, the bill was to be relieved against an annuity bond, and to reduce the sum from 150l. to 100l., according to the original understanding and agreement of the parties. The answer denied positively all the circumstances, and every particular of the private agreement, and parol proof, by several witnesses, was objected to and admitted, which falsified *600 the answer, and made out the real agreement to the satisfaction *of the Court, and though relief was not granted, it was refused upon other and distinct grounds no ways connected with the question, as to the competency and effect of the proof.
It is the settled law of this Court, as was shown in the case of Boyd v. M’Lean, (1 Johns. Ch. Rep. 582.) that a resulting trust may be established by parol proof, in opposition to the deed, and in opposition to the answer denying the trust. There is no reason why the answer should have greater effect in this than in that case, and there would be manifest inconsistency in the doctrines of the Court, if such a distinction existed. The case of Marks v. Pell, (1 Johns. Ch. Rep. 598—9.) which was referred to by the defendant’s counsel, admitted, that parol proof of mistakes was competent; and it was held not to be sufficient, in that case, because it consisted of naked confessions of a party, made seventeen years after peaceable possession, under a deed. The confessions, in that case, were also of a negative kind, and deduced from tacit acquiescence : the party who made them was dead, and the possession had been, for thirty years, under the deed, and there were no corroborating circumstances in aid of the confessions. Surely there is nothing to be drawn from that case, in opposition to the competency of the proof in this.
[ * 602 ]
We have a strong case on this subject, in Washburn v. Merrills, which was decided on the equity side of the Supreme Court of Connecticut, in 1801. (1 Day’s Cas. in Error, 139.) A mortgagor, in that case, made, by mistake, in 1784, an absolute deed, which he did not discover until some time after. The mortgagee got into possession, and, in March, 1801, sold to a purchaser, by a deed with covenants of warranty. In August, 1801, a purchaser under the mortgagor filed his bill, or petition, against the purchaser under the mortgagee, to redeem. The answer set up the statute of frauds as a defence; and, on the trial, parol *proof of the mistake was offered by the plaintiff, objected to and admitted, and the deed established as a mortgage, and a right of redemption decreed. This decree was afterwards unanimously confirmed, in the Court of Errors of that state,
My opinion, accordingly, is, that the parol proof, in-this case, was competent and admissible, and that it establishes, Vmóst clearly and conclusively, the fact of the mistake, as 'charged in the bill.
I am, also, of opinion, that there is no acquiescence here ¡ to bar the plaintiffs. Mrs. Mann was but a trustee for one of the plaintiffs, then an infant; and it is in proof, that when she discovered the mistake, she communicated the fact, as *602 early as 1806, to Joseph Harris, who called upon her, as agent for the defendant, when she told him of her intention to commence a suit in this Court. She died in 1814, and the present' suit, by the cestui que trust, was commenced with all due diligence. There is no pretext for the suggestion of any delay, or acquiescence, injurious to the just rights of the plaintiffs. Courts have been liberal on this head. A mistake was rectified, after seven years’ acquiescence, in East v. Thornbury, (3 P. Wms. 126.) and if Lord Hardwicke refused it in Bell v. Cundall, (Amb. 101.) it was after a lapse of forty-four years, and where there was a purchaser without notice.
Nor has the defendant any equitable claim for compensation for his improvements made upon those fifty acres. They were made by him after he knew of the mistake, and had declared his intention to take advantage of it, and fraudulently carried that intention into effect. Such an allowance would be confounding all moral distinctions, and be giving countenance and sanction to the most flagrant injustice.
[ * 603 ]
I shall, therefore, decree, that the defendant release, and convey to the plaintiffs, with proper covenants against *his own acts, the fifty acres leased to Jonathan Cable, and possessed bv him, and that he pay the costs of the suit.
Decree accordingly.