HOOPER v. The SAM SLICK. See Case No. 12,283.

HOOPER, The NATHANIEL. See Cases Nos. 10,030–10,032.

HOO SUE (LLOYD v.). See Case No. 8,432.

HOOVER (MANNING v.). See Case No. 9,-044.

---

## Case No. 6,677.

### HOOVER et al. v. REILLY et al.

[2 Abb. U. S. 471.] [1]

Circuit Court, E. D. Michigan. June Term, 1870.

MISTAKE—REFORMATION OF AGREEMENT.

1. Where an agreement between two parties was reduced to writing, and read over and signed by the complainant, it is not sufficient in a suit in equity for the reformation of such agreement, for the complainant to allege that he supposed the terms of the written agreement were, in legal effect, the same as the true terms of the agreement previously entered into by the parties. Such a mistake is one of law, and not of fact; and will not warrant the interference of a court of equity.
[Cited in Morgan v. Bell (Wash.) 28 Pac. 931.]

2. What evidence is sufficient to warrant the granting of relief by a court of equity in a suit to reform a written agreement, on the ground of mistake,—explained.

Hearing in equity, upon pleadings and proofs.

The bill in this case was filed to reform a written contract. On November 13, 1865, complainants purchased of defendant Reilly an undivided one-fourth interest in a patent right for an improvement in harvesting machines, for five thousand dollars, as follows: Two thousand dollars, cash; five hundred dollars, note due March 1, 1866; and twenty-five hundred dollars, note due January 1, 1867. A written agreement was also entered into between the parties, in which, after reciting the terms of purchase as above set forth, it was provided as follows: "It is expressly understood and agreed, by and between both parties, that in case the validity

¹ [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

of the claims, as set forth in the re-issued patent granted to the said John Reilly, should be declared null and void by the supreme court of the United States, and the protection thereon granted become worthless, then the said D. H. Hoover & Son" (the complainants), "shall be released from all responsibility of paying the last-mentioned note of twenty-five hundred dollars, and it shall be null and void." The bill alleged that this instrument was erroneous, and did not contain the true terms, nor all the terms of the agreement as actually entered into by the parties, in this: (1) Instead of the note remaining good and payable, in case the letters patent should not be declared invalid by the supreme court of the United States, as provided in effect by said agreement, the real agreement and contract was, that the said note was not to be paid until a competent court should declare, by judgment or decree, that the said patent was valid. (2) That the said instrument omits entirely to state that the said Reilly was to commence a suit immediately, for the purpose of testing the validity of the said letters patent, as was really and in fact agreed upon. The bill further alleged that the defendant Reilly drew up the said agreement, and that in doing so, he "fraudulently" made the alteration and omission above mentioned, and that complainants signed it "under a mistake, they believing when they signed such paper that it contained all the conditions," &c.; "that complainants are unlearned in the law, and that when they read said paper, as drawn by said Reilly, they believed the clause inserted therein making said note void, in case the patent was declared null and void by the supreme court of the United States, to be, in effect, what had been previously agreed upon between the parties," &c. The bill further alleged that suit had been commenced on the note mentioned in the agreement in the name of the defendant Reilly, for the benefit of the defendant Moore; that the defendant Reilly had not commenced suit to test the validity of his patent, and no judgment or decree of any court had been obtained declaring the same to be valid; and prayed that said written agreement might be reformed in accordance with the real intention of the parties, as set up and claimed in the bill, and for an injunction restraining the further prosecution of the suit upon the note. The bill did not call for an answer on oath, neither did it expressly waive an answer being put in on oath. The answer, however, was on oath, and it expressly denied all the material allegations in the bill as to there being any omissions or errors in the said written agreement; and alleged that said instrument set forth correctly the agreement, and the whole thereof, as it was concluded between the parties; that the complainants had not by their bill made a case requiring the interposition of the court, and defendants prayed the same benefit of this defense as if they had de-

murred, &c. A replication was put in and proofs were taken; on which the cause was now heard.

Mr. Fisher and Mr. Oliver, for complainants.

Moore & Griffin, for defendants.

LONGYEAR, District Judge. The case made by the bill is, not that complainants were mistaken as to the words or language of the written agreement, but that they misapprehended its legal effect. They concede that they read it, and allege in express terms that they believed a certain specified clause to be in effect, what they allege the real agreement was. There can be, therefore, and is no pretense that there was any mistake of fact in the case. It was purely a mistake of law. The bill does not allege that the belief so entertained by complainants as to the legal effect of the language used, was induced or brought about by any device, statements, representations, or expression of opinion of the defendant Reilly. True, it is alleged that Reilly "fraudulently omitted," &c., and that certain provisions were "fraudulently omitted by said Reilly from said paper," &c. But these allegations relate exclusively to Reilly's acts in drawing the paper, and not in any manner to anything he did or said afterwards or at any time to induce in the minds of complainants the erroneous belief which they say they entertained. Neither can it be seriously contended that those are sufficient allegations of fraud upon which to base a prayer for a court of equity to exercise the high powers here invoked. The mere writing of the agreement different from what it was intended to be would be a mistake, an error, but not necessarily a fraud; and yet from aught that appears in the bill, this is all there was of it. There is no allegation of any concealment or misrepresentation as to the language used, but on the contrary the complainants had it in their possession, perused it, and, without any undue influence, concealment, surprise, or imposition whatever, formed a deliberate opinion as to its legal effect, and were satisfied with it.

The complainants then, by their bill, seek to have the written agreement reformed solely on the ground that, knowing what it contained and all its provisions, they signed it under a mistaken belief as to its legal effect. The case might perhaps appear more plausible if the language used were uncertain or ambiguous in its meaning, or of doubtful construction. But such is not the case. It is plain and explicit, and such that any person of even less than ordinary intelligence, although not learned in the law, could not fail to comprehend.

Although there are some decisions which would seem to be to the contrary, yet the law is well settled that agreements made and acts done under a mistake of law, stripped of all other circumstances, without any admixture of other ingredients going to establish misrepresentation, imposition, undue confidence, undue influence, mental imbecility, or that kind of surprise which equity uniformly regards as a just foundation for relief, are held valid and obligatory. Adams, Eq. 189-191; 1 Story, Eq. Jur. §§ 16, 120, 151; Lyon v. Richmond, 2 Johns. Ch. 51, 60.

The case at bar comes clearly within the law as above stated, and, as made by the bill, is not such as to entitle the complainants to the relief prayed for. If, however, we pass beyond this aspect of the case, and look into it as a question of fact, the result must be the same. The case in this aspect, no doubt, comes clearly within a well-recognized branch of equity jurisdiction; but before the court can be asked to decree an agreement to exist between parties different from that which they have put in writing, a mistake in the written instrument must be clearly made out by proofs entirely satisfactory. "But," says Mr. Story, "if the proofs are doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief; upon the ground, that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy." Mr. Story further says of this rule, "It forbids relief whenever the evidence is loose, equivocal, or contradictory, or it is in its texture open to doubt or to opposing presumptions." 1 Story, Eq. Jur. §§ 152-157; citing numerous cases, English and American. See, particularly, Gillespie v. Moon, 2 Johns. Ch. 585-597; Lyman v. United Ins. Co., Id. 630, 634.

Apply this well established rule to the present case, and how does it stand? The mistake alleged in the bill, or any mistake whatever in the written instrument, is expressly denied by the answer. The bill does not expressly call for an answer on oath; neither does it expressly waive an answer on oath; it is entirely silent upon that subject. This was, of course, a defect in the frame of the bill, but the defendants having waived the defect and submitted to answer, their answer must be on oath, the same as though it had been so expressed in the bill, because, by rule 105 an answer on oath is not waived unless it is so expressed in the bill. By well known rules of equity pleading and evidence, the answer being strictly responsive to the bill in regard to the alleged omissions and errors in the written agreement, is evidence for the defendants, and can be overcome only by a clear and undoubted preponderance of proof.

The complainants and the defendant, Reilly, were sworn as witnesses. Upon a full and careful perusal of their testimony, I can see nothing in it to change the aspect of the case, as it was left by the pleadings. It is equally contradictory, and of no greater force or effect than the pleadings.

There were but two other witnesses who testified in the case; Mr. Eminger, on the part of complainants, and Mr. Robinson, on the part of defendants. Each of these witnesses testifies, that he was present and heard all that transpired between the parties; and the testimony of each is almost, if not quite, as directly in conflict with that of the other, as the testimony of the parties to the suit. The testimony of Robinson is, however, much the more pointed, specific, and satisfactory.

Eminger testifies upon the main point in controversy, as follows: "For the balance, a note was to be given, payable January 1, 1867, providing Mr. Reilly sustained his claims before a competent court. Afterwards, but before the contract was signed, he repeatedly asserted that the Messrs. Hoover should not pay said note unless his claim was sustained by the court." "After the papers were signed, Mr. Reilly again said, that the Messrs. Hoover should have no uneasiness concerning the last note, that he would never ask them to pay a dollar on it unless his claim should be sustained in court." And in a conversation witness had with Reilly after the contract was signed, he said, "You see I don't want anything but what is fair from the Messrs. Hoover, and that unless I make my claims good, I shall never ask them to pay a cent on the note." Thus far we are left entirely to inference, as to whether an adjudication was to be brought about by a suit to be instituted by one party or the other, and if so, by which party; or, whether it was left contingent upon a suit to be commenced by some other party. But inference is not sufficient ground upon which to do away with or reform a written agreement. As we have seen, the proof must be clear and positive. But this witness gives us a little more light upon the subject. He says, "Mr. Reilly did say that he wanted money to prosecute parties who were infringing upon his patent, meaning Mr. Seiberling, and that he would immediately, as soon as he got matters arranged at home, notify the parties, and if they did not agree to pay him royalty, he was to prosecute them in the highest courts, and thereby test the validity of his patent. It was also the understanding, that the contemplated suits should be or were a part of the contract, and that unless he made his claim valid, he would never ask the Messrs. Hoover to pay the last note of $2,500."

What "contemplated suits" are here referred to? Of course, those mentioned just before, that is, suits to be commenced by Reilly, in the contingency that parties infringing his patent, on being notified, did not agree to pay him royalty. As to what was to be done in regard to commencing suits in case such parties did agree to pay him a royalty, we are left entirely in the dark. The only inference we can draw from this testimony is, that if parties so infringing did agree to pay royalty, then no suits were

to be commenced. And this is really the common sense of the thing after all. Let this be inserted in the contract just as testified to by this witness, in lieu of the provision as it now stands, and it would make no material change in the legal effect of the agreement as a whole.

The testimony of Robinson is much more explicit and satisfactory, and it contradicts Eminger in every important particular; and as he stands before the court on an equal footing with Eminger, as to credibility, his testimony at least neutralizes that of Eminger; and it may be further said, that, being in conformity with the written agreement, it is for that reason of greater weight than that of Eminger, which is in opposition to it.

The proofs therefore, do not bring the case within the rule of law above stated, under which relief may be granted in such cases, and for that reason, as well as for the reason before stated, that the bill does not state such a case as equity will relieve against, the bill must be dismissed, with costs to the defendants. Let a decree be entered accordingly.