HENRY HARDING and others *vs*. TIMOTHY EGIN.

## April Term, 1874.

MISTAKE AS A GROUND OF RELIEF.—Mutual mistake is a well-established ground of equitable relief; and so is the mistake of one party only, even of the party applying for relief, if clearly proved.

PRACTICE—DEMURRER IN AN ANSWER.—Under the Code, § 4319, a demurrer may be embodied in an answer, but such demurrer should be set for hearing by the defendant at the earliest opportunity, under the penalty of costs, and, it may be, of losing its benefits.

*John Ruhm*, for complainant.
*M. M. Brien, jr.*, for defendant.

THE CHANCELLOR:—The bill alleges that, on the 2d of October, 1872, complainant sold to defendant a lot bounded as follows : Commencing fifty feet from Dock Burke's corner, on Jackson street, in Harding's addition to Nashville, and running thence eastwardly eighty feet, along Jackson street, to Felix Paskett's corner, thence northwardly 150 feet, to an alley, thence westwardly eighty feet, thence southwardly 150 feet, to the beginning. That in the deed conveying the land thus sold, "through inadvertence and mistake of the draftsman," the land is described as beginning at the "southeast corner of Dock Burke's lot," instead of fifty feet from Dock Burke's corner, the other boundaries being correctly given in the deed. The difference between the lot sold and the lot conveyed is that the former was a parallelogram fronting eighty feet on Jackson street, and running back 150 feet, of equal width, to an alley, whereas the lot conveyed, although it expressly calls for only eighty feet front on Jackson street, would, in fact, have a front of 130 feet, and the fourth line called for, instead of being parallel to the second, and only 150 feet long, as expressly

stipulated, would run· diagonally a longer distance to the beginning corner, and include a triangular addition to the lot as sold. The bill distinctly charges that the defendant only bargained with complainants for the eighty-feet front, on Jackson street, nearest Paskett's corner; that the same was pointed out to him; that he took possession, after the conveyance, of only the lot sold and intended to be conveyed, and surrounded it with a fence, and improved it; that complainants retained possession of and improved the fifty-feet lot adjoining, part of which would be included in the triangular slip added by the misdescription, and the defendant never claimed the fifty feet until complainants discovered the error in the conveyance, a short time since, and called upon him to join them in reforming the deed, which he declined to do, and set up a claim to said lot.

The defendant has filed what he calls "the demurrer and answer of Timothy Egin," which commences with a demurrer assigning special causes, and then, "without waiving the benefit of the demurrer," proceeds to answer. He has set the demurrer for hearing.

The causes of demurrer assigned are:

1st. No fraud is charged against defendant.

2d. The mistake is not charged to be mutual.

3d. The mistake alleged is not shown to be without fault of complainants.

4th. Complainants do not allege accident, surprise, or that they were circumvented by any act of defendant.

The relief sought in the bill is put exclusively upon the ground of "inadvertence and mistake of the draftsman" of the deed, without stating who was the draftsman. The bill does not say in so many words that the mistake was mutual, but the facts averred demonstrate, if true, that it was mutual; for it distinctly charges that defendant bought only the eighty feet nearest Paskett, took possession of that part alone, fenced it in and improved it, and set up no claim to the adjoining land, which the complainants continued to retain possession of, and had improved,

until recently, and after the complainants had discovered the mistake and applied to him to rectify it. The bill does, therefore, show a mistake of the draftsman, and a mutual mistake of both complainants and defendant as to the boundary lines of the deed. The bill does not charge the defendant with fraud in the matter of the mistake, nor that it was committed by any act of his, nor does it claim that complainants were without fault in the premises. The question, therefore, is whether a mutual mistake of the parties as to the boundaries of a deed, growing out of the " inadvertence and mistake of the draftsman," whoever he may have been, is sufficient to authorize a court of equity to rectify the instrument; and of this there cannot be a doubt. Mutual mistake—and this the demurrer impliedly concedes—is a well-established ground of equitable relief. *King* v. *Doolittle*, 1 Head, 77, 87; *Irwin* v. *Burnett*, 6 Head, 342; *Phillips* v. *Hollister*, 2 Coldw. 269, 277; *Merriweather* v. *Larman*, 3 Sneed, 448; *McAdoo* v. *Sublett*, 1 Humph. 105, 112; *Gillespie* v. *Moon*, 2 Johns. Ch. 585.

And even where the mistake is of one side only, and made by the fault of that party himself, equity will relieve, if the mistake be clearly proved. *Helm* v. *Wright*, 2 Humph. 72, 77; *Cromwell* v. *Winchester*, 2 Head, 389; *Barnes* v. *Gregory*, 1 Head, 230; *Horn* v. *Denton*, 2 Sneed, 125; *Ball* v. *Storie*, 1 Sim. & St. 210.

A clearer case of equity could scarcely be conceived of than that made out by this bill, and the circumstances almost demonstrate it without parol proof of the contract. *Pugh* v. *Brittain*, 2 Dev. Eq. 34. The demurrer is not well taken, and must be overruled.

The learned counsel of complainant made the point, in his argument, that the demurrer in this case was overruled by the answer, and is not the kind of demurrer provided for by § 4319 of the Code. Previous to that statutory provision, an answer to any part of the bill covered by the demurrer would overrule the demurrer. Story Eq. Pl. § 442; 1 Dan. Ch. Pr. 615. It was found that this rule

operated to produce great delay in practice in this state, where the large majority of our chancery courts are only held for a few days at a time, and where the lawyers, owing to the press of business, are not able to make up their pleadings promptly, and are either constrained to give up any defence by demurrer, or to delay a hearing for six months. Under these circumstances, the Code, as the remedy for the evil, provided that the defendant need not demur separately, but might " have the benefit of a demurrer by relying thereon in his answer," § 4319. This was only making a general rule of what was very often done in practice by the Chancellors in overruling demurrers, with leave to the defendant to rely thereon in his answer. The effect of the provision is to enable both parties to prepare the case for hearing without losing the time which might elapse before the demurrer could be disposed of. But, that this indulgence might not work further than the evil to be remedied, it is provided, by § 4320, that either party may set the matters of demurrer for hearing at the " next term," meaning the term at which the demurrer is filed, or which occurs after it is filed. If, therefore, the demurrer contains substantial causes, it should be set for hearing as speedily as possible by the party relying upon it; otherwise, he may be charged with costs, and may be held to have waived its benefits. Of course, such a demurrer may be either prefixed or suffixed to the answer, or inserted in the body of it. The form is not material, provided the proceeding is within the spirit of the law.