## CHARLES STINES

### v.

## AARON HAYS.

In 1871, the complainant and two adjacent land-owners agreed in writing with the defendant to convey to him a strip of land for a road, with an exception or reservation to the vendors of a right to use the road. By a mistake of the scrivener, who was chosen by the defendant, the complainant's deed did not state that the strip was conveyed for a road, and also omitted the exception or reservation of his right to use it. The road was used by the complainant from 1871 to 1881, when the defendant denied his right to use it. The complainant discovered the mistakes in his deed in 1879.—*Held*, that the deed should be reformed so as to state that the land was conveyed for use as a road, and also complainant's right to use it.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. Geo. O. Vanderbilt*, for complainant.

*Mr. John Schomp*, for defendant.

THE CHANCELLOR.

This suit is brought to rectify a deed given August 15th, 1871, by the complainant, Stines, and his wife to Hays, the de-

fendant, for a strip of land sold July 25th, 1871, by Stines to Hays for a roadway. At the time of the sale and conveyance, the complainant was the owner of a farm, whereon he resided and of which the strip then formed part, lying on the public road from Kingston to Rocky Hill, and the defendant owned a farm on which he lived, in the rear of the complainant's property. For very many years—perhaps for half a century or more —there had existed a drift-way, to the use of which the defendant had a right from his farm to the highway over the complainant's farm at and along the northern boundary thereof. There were three gates across this drift-way. The complainant also used the drift-way. The defendant, in order that he might have an open and a better road, one which he might put and keep in good condition, desired to buy for the purpose the before-mentioned strip from the complainant, and certain land of William A. Pierce and Charles B. Moore, respectively, which adjoined the complainant's property for part of the way, and which would be needed for the road. The drift-way was on the strip which the defendant wished to buy of the complainant. The defendant bought the requisite land from the complainant, and Pierce and Moore, respectively, and an agreement in writing dated July 25th, 1871, for the purchase and sale was entered into between him and them accordingly. By that agreement Hays agreed to purchase all the land then occupied by him as a road, lying between the property of Stines and the lands of James Tynan, Pierce and Moore; the road to be surveyed within a time and by a surveyor named in the agreement, and to be twenty-six feet wide. And it was also thereby agreed that Hays should pay at the rate of $100 an acre for the land, and make and keep in repair the fence along the road, and be at all the expense of surveying the road and attending to the sale of the land for the road. And the other parties to the agreement thereby agreed to make him a good and sufficient deed according to the agreement. The agreement further provided that the purchase-money should be paid on the making of the deeds; that the purchaser should not disturb the growing crops, and that each of the parties should have the use of the road by making

bars in the fence. Deeds were executed and delivered by the vendors to Hays for the land by them respectively sold to him. The deed from the complainant contained a provision in regard to the fence, which, according to the statement of the bill, is as follows :

" The said Aaron Hays, party of the second part, is to make and keep in repair all the fence on south sides of this road, and to be at all expense of the same."

But it contained no reservation or grant of the right to the complainant to use the road, nor any other covenant on the part of the defendant except that just quoted. Soon after the deeds were delivered, the defendant set the fences on both sides of the road, and removed the gates. The complainant appears to have had the use of the road for access to the part of his farm adjacent to it until the spring of 1881, when the defendant denied him all further use of it. In the spring of 1879, the complainant first discovered that the deed from him to the defendant contained no provision securing to him the use of the road. The bill is filed to reform the deed by making it conform to the agreement, both in respect to the use of the road by the complainant, and the making and keeping in repair of the fence by the defendant. The defendant, while he does not by his answer deny that the agreement contained the provision in regard to the use of the road by the complainant, alleges therein that he never understood that the complainant was to have any right to use the road in any way, and says that if any such expression appears in the agreement, it was contrary to his understanding and was not noticed by him, and must have crept into that instrument inadvertently and by mistake. He also insists that the deed was drawn in accordance with the agreement between the parties, and that it is conclusive evidence of what the agreement between them was. He also avers that the use which the complainant made of the road was, and was understood by the complainant, to be merely by his permission as a neighborly courtesy, and not of right or under a claim of right. The evidence that the provision for the use of the road by the complainant was contained in the

Stines *v.* Hays.

agreement is plenary. It also appears clearly that the defendant understood and knew it was there. When the agreement was drawn it did not contain it. After it was drawn and when it was read over to the parties, the complainant objected because it did not contain the provision, and it was then inserted. Alexander Gulick, the subscribing witness, testifies on the subject as follows:

"The agreement was all drawn ready to be signed by the parties, and the parties were there to sign it, and Mr. Stines objected to signing it until that clause was put in by Mr. Moore (who drew the agreement), and that is the way it was squeezed in, as the agreement shows; Mr. Stines insisted on the clause being put in; I said it was good enough; Mr. Hays did not say anything, and Mr. Moore went on and completed it; Mr. Hays had not signed the agreement before the clause was put in."

The complainant's testimony on the subject is to the same effect. Mr. Moore testifies that after he had drawn the paper he read it over and laid it on the desk, stepped back to where Mr. Stines was sitting on the counter, and Mr. Stines said to him, "You have left out the use of the road;" that this was either before or after the agreement was signed, and that he called the attention of the parties to it and it was inserted. There is some corroboration of the testimony of these witnesses on this point in that of Henry Silcocks, who was present when the agreement was signed. Nor does the defendant himself deny, with any degree of positiveness (and he is not supported by any witness), that the addition was made to the agreement as alleged by the complainant and Messrs. Gulick and Moore. And even if he did so positively, his testimony would not countervail that on the part of the complainant; for the fact would still stand proved by the preponderance of evidence. By the agreement it was provided that the defendant should be at all the expense of surveying the road and attending to the sale. He employed a scrivener, who was also a surveyor, to make the requisite surveys and draw the deeds, and they were made and drawn by him accordingly. The scrivener never saw the agreement nor any copy of it. Nor did he receive any instructions from the complainant on the subject of the deed. To the question whether he put

everything in the deed that the parties asked him to put in, he answers that he does not think either of them gave him any instructions ; that they said they wanted a deed for the land which was sold. And it is quite probable, from his testimony, that if he had seen the agreement, he would not have inserted the provision as to the use of the road in the deed. He appears to have regarded it as correct practice in conveyancing, not to introduce such matters in deeds of conveyance of land. When asked whether, if the parties to the agreement had wished to have its terms incorporated in the deed, he would have done it, he answered that he did not think he would have done so. He testifies, indeed, that he read the deed over to the complainant and his wife when it was executed, but they both testify to the contrary ; and it is not at all unlikely that his recollection on that subject is not to be relied on, seeing that when he gave his testimony, ten years had elapsed since the execution of the deed. Still further, the fact that he certified to the acknowledgment of Mrs. Moore on the deed from her husband and herself to Hays, when she had not signed the deed (and never signed it), as he well knew, repels all presumption based on his carefulness or practice. It is apposite to remark that though when he was first called, he testified that he thought he read the deed from Moore to the defendant over to Moore and his wife, he subsequently said that he did not think he read it over to Mrs. Moore, but only told her what it contained—that it was a deed for a piece of roadway to Mr. Hays. The complainant swears that he did not know until 1879, that the provision in question was not in the deed. There is no evidence whatever that there was any understanding between the parties that the provision should not be in the deed, nor any evidence that the complainant agreed to relinquish the benefit of it, but on the other hand, there is abundant evidence that he insisted on his right to it, from the time when the deed was given: Nor is there any evidence that the deed contains the final agreement between the parties, nor that the complainant, with knowledge of the omission, acquiesced in the deed. Where an instrument is drawn and executed which professes or is intended to carry into

execution an agreement previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill that intention, or violates it, equity will correct the mistake so as to produce a conformity to the instrument. *Hunt* v. *Rousmaniere, 1 Pet. 1; Wintermute* v. *Snyder, 2 Gr. Ch. 489; Loss* v. *Obry, 7 C. E. Gr. 52.* The jurisdiction of the court of chancery to relieve against deeds drawn up by mistake, contrary to the intention of any one of the parties, is, says Mr. Spence, of a very early date. *1 Spence's Eq. Jur. 633.* Nor will the fact that the defendant denies that there is a mistake, and testifies that the deed was drawn according to the intention of the parties, prevent the court from granting the relief, if it is satisfied that the deed is not in accordance with the agreement, but ought to be so. *Gillespie* v. *Moon, 2 Johns. Ch. 585; Kerr on F. & M. 421; Loss* v. *Obry, ubi supra; 1 Story's Eq. Jur.* §§ *156, 157.* In this case, the complainant reserved to himself the right to use the road, and was careful to have a provision to that effect inserted in the agreement; and the agreement provided that the deed should be made according to the agreement. It is but just that the deed should, under the circumstances, be reformed so as to include the reservation, and secure to the complainant the right which constituted part of the consideration of the conveyance. If it was omitted from the deed by the direction of the defendant, against the will of the complainant, and without his knowledge, it was omitted by fraud; otherwise, it was by mistake. In either case, the complainant is entitled to relief. The attempt to prove that the complainant has a better and more convenient and direct road over his farm to the land bordering on the road in question, if it had been successful, obviously would not have affected his right to the relief he seeks; for the question is not whether he needs the right to use the road, but whether it was agreed that he should have it. Such proof is only competent upon the question as to whether there was in fact such an agreement; but the evidence of the written instrument, and the testimony of Messrs. Moore and Gulick and the complainant, leave no room for doubt on that head. As to the provision for making and

24

keeping in repair the fence, the deed is in conformity to the agreement. The agreement provides that the defendant shall make and keep in repair the fence along the road. The deed provides that he shall make and keep in repair all the fence on "south sides of this road." The word "south" was undoubtedly originally written "bouth" (both). The agreement does not require the defendant to make and keep in repair the fences on both sides of the road, but the fence along the road. The deed makes no previous reference to the road. It is merely a conveyance of the strip of land, with no indication as to the use to which it is to be devoted, except from the words "this road" in the provision under consideration. It should be amended by inserting a statement that the land was sold and conveyed for use as a road. The complainant is entitled to a decree rectifying the deed by inserting the provision securing to him the use of the road, and also a statement as to the use for which the land was sold and conveyed. Under the circumstances, he should have costs.