(164 App. Div. 591)

EIDLITZ et al. v. MANHATTAN WRECKING & CONTRACTING CO.
(No. 6362.)

(Supreme Court, Appellate Division, First Department.   December 4, 1914.)

1. REFORMATION OF INSTRUMENTS (§ 19*)—RIGHT TO RELIEF—INADEQUACY OF REMEDY AT LAW.

Where a written contract for the wrecking of certain buildings by mistake included other buildings not intended by the parties, and the wrecking company removed the valuable materials from the buildings intended to be included, and then refused to proceed, because it was not given possession of the other buildings, the other party to the contract has no adequate remedy at law, and is entitled to equitable relief, reforming the contract.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 74–78; Dec. Dig. § 19.*]

2. REFORMATION OF INSTRUMENTS (§ 32*)—LACHES—INJURY TO DEFENDANT.

An action for the reformation of a contract for the wrecking of buildings, on the ground of mistake, which was not begun until more than two years after the execution of the contract, is not barred by laches, where it did not appear that the defendant had been caused to change its position to its hurt by the delay in bringing the action, especially where there had been pending in the meantime an action at law by the defendant against the plaintiffs, in which plaintiffs relied upon the mistake as a defense, and which was dismissed only two days before the equitable action was begun.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 119–121; Dec. Dig. § 32.*]

Appeal from Special Term, New York County.

Action by Otto M. Eidlitz and another against the Manhattan Wrecking & Contracting Company. Judgment for the defendant (84 Misc. Rep. 243, 145 N. Y. Supp. 889), and plaintiffs appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Eidlitz & Hulse, of New York City (Frederick Hulse, of New York City, of counsel), for appellants.

Feltenstein & Rosenstein, of New York City (Moses Feltenstein, of New York City, of counsel), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J. The learned Special Term in its decision found, inter alia, the following facts:

The plaintiffs, doing business under the firm name and style of Marc Eidlitz & Son, on May 17, 1911, entered into a written contract with the New York Society for the Relief of Ruptured and Crippled for the erection of a hospital on the site of the buildings then known as 304–322 East Forty-Third street, inclusive, and 303–325 East Forty-Second street, inclusive, in the borough of Manhattan, city of New York. Theretofore, and on May 11th, the defendant made application to the Society, asking to whom defendant might submit estimates for the demolition of the buildings on said site. On the 27th of May plaintiffs received from the Society this letter of inquiry of the defendant, and on the same day they wrote to the defendant:

"Inclosed please find proposal form. Will you please submit your estimate thereon, and let us have same at this office not later than Monday afternoon next?"

In the envelope with said letter plaintiffs mailed three inclosures: A diagram showing the site of proposed hospital and containing the numbers of the houses to be wrecked, which on Forty-Third street ran from 304 to 322, inclusive; a typewritten blank proposal, on which the language was, "We hereby agree to furnish * * * all labor and materials * * * necessary to take down and remove from the premises all portions of said buildings, including fences and outhouses in back yard, and the cutting down and removal of trees, now situated at 304 to 332 East Forty-Third street, inclusive, and 303 to 325 East Forty-Second street, inclusive"; and also an envelope addressed to the plaintiff—which letter and inclosures the defendant received.

On the 11th day of May, 1911, the defendant's president, Levenson, read an article in the New York Times regarding the site of the proposed hospital, which said:

"Complete Site for New Hospital.

"The Society for Ruptured and Crippled Children has completed the site for its proposed building to replace the old Lexington avenue property by the purchase of 310 East Forty-Third street and 303 East Forty-Second street. * * * The hospital trustees have accumulated a frontage of 200 feet on Forty-Second street and 170 feet on Forty-Third street just east of Second avenue, which is to be improved for a group of buildings."

Immediately after receiving the letter with the three inclosures, Levenson visited the site and inspected the houses standing thereon, and found all of the houses, namely, 303–325 East Forty-Second street, inclusive, and 304–322 East Forty-Third street, inclusive, vacant, but found the houses 324–332 East Forty-Third street, inclusive, fully occupied.

The court further found:

That on or about the 1st day of January, 1911 (which is an evident mistake for the 1st day of June), plaintiffs and defendant agreed upon the terms of a contract whereby defendant agreed to wall and sufficiently perform and finish demolition and removal of all rubbish occasioned thereby at the site to be used as the building of the Society known at 304–322 East Forty-Third street, inclusive, and 303–325.

inclusive, East Forty-Second street, said work to be done within 30 days after possession shall be given to defendant, and defendant was to pay plaintiffs for the privilege of demolishing said buildings and using the contents thereof $365. After the aforesaid terms had been agreed upon, plaintiffs stated that they would have the contract drafted, which contract was to express their agreement and intentions as hereinbefore set forth; that they did undertake to do so, and the said instrument was on June 1st executed by both parties and is Exhibit 9. This agreement described the work generally as:

"All demolition and removal of rubbish occasioned thereby, as per attached proposal, for and at the buildings for the New York Society for the Relief of Ruptured and Crippled, 303 to 325 East Forty-Second street."

At the time of the execution by the parties of Exhibit 9, the proposal, Exhibit 8, was also attached to Exhibit 9. In the proposal the numbers of the houses on East Forty-Third street were incorrectly stated, and should have been 304–322, instead of 304–332. That between the 2d of June and the 16th of June the defendant removed all the junk, fixtures, and other materials of value from the buildings 304–322 East Forty-Third street and 303–325 East Forty-Second street. That, the plaintiffs refusing to deliver to the defendant the possession of the five houses 324–332 East Forty-Third street, the defendant ceased work after having demanded possession of said houses. That on June 16th the defendant abandoned the work it had agreed to do, and neglected and refused to complete the work. That thereafter the plaintiffs were compelled to and did complete the work which the defendant had agreed to do. That the plaintiffs have duly performed each and every the terms of said agreement on their part to be performed.

On the 14th of October, 1911, defendant began an action in the City Court to recover $5,000 damages for the breach of said contract, and on November 3d the plaintiffs here, the defendants there, interposed an answer, setting up a separate defense that the buildings 324–332 East Forty-Third street were included in said contract by mistake, and that there had been a waiver of the provisions of the contract including said houses, and setting up by way of counterclaim the same facts, and, after alleging the abandonment of the work on said contract, demanded an affirmative judgment against the plaintiff for $2,300. That case was tried, and a judgment entered for the plaintiff on June 22, 1912, which on appeal to the Appellate Term was reversed. Thereafter the defendants there, the plaintiffs here, served an amended answer, and subsequently the case was removed to the Supreme Court, and on October 16, 1913, it came on for trial, and at the close of plaintiff's evidence the complaint was dismissed.

On October 28, 1913, the plaintiffs commenced this action to reform the contract and for judgment for damages occasioned by the alleged breach of the defendant. Notwithstanding the facts as found by the learned court clearly established the mistake in the inclusion of the buildings Nos. 324–332, and warrant the reformation of the contract, the complaint was dismissed, the conclusions of law being:

"(1) That the plaintiffs had and have a complete and adequate remedy at law. (2) That the plaintiffs are guilty of such laches in commencing this action about October 28, 1913, that they are precluded from maintaining this action."

[1] I am unable to perceive how the plaintiffs had and have a complete and adequate remedy at law. What they demand is damages for the alleged breach of its contract by the defendant, who, having got into possession of all the buildings intended to be covered by the contract, ripped out all material that was of any value to them, and then refused to complete, alleging as a reason that they did not get the five buildings which they thoroughly well knew were not included in the site of the new hospital and within their contract. The mistake, being proved, might have been a defense in the action brought by the defendant for the alleged breach on plaintiffs' part in not putting it into possession of the extra buildings; but how the present plaintiffs could recover damages in an action at law, the contract remaining unchanged, I fail to see. I think they were required to go into equity for a reformation of the contract.

[2] I am also unable to perceive such laches on their part as will defeat a recovery. The statute of limitations has not run, and the defendant has not been caused to change its position to its hurt by the delay in bringing the action. In Andrews v. Gillespie, 47 N. Y. 487, the court said:

"The correction of mistakes in written instruments, occurring by accident, fraud, or otherwise, has been one of the acknowledged branches of equity jurisdiction from the earliest history of the court, and the party injured by the mistake has a right to demand its correction upon furnishing satisfactory proof that it has been made. Gillespie and Wife v. Moon, 2 Johns. Ch. 585 [7 Am. Dec. 559]. In this case, Chancellor Kent, with his usual ability, states the doctrine and the principles upon which it rests, and reviews many of the cases which had then been determined, and shows that delay in commencing proceedings will not alone prevent the granting of relief. In this case, a mistake in a deed was corrected after the lapse of 14 years, there then being no statute barring the action, if not commenced within that period. This, and the cases cited, shows that lapse of time, in the absence of such statute, will not prevent the granting of the relief."

In Bidwell v. Astor Mutual Ins. Co., 16 N. Y. 263, the court said:

"There is no rule of law which fixed the period within which a man may discover that a writing does not express the contract which he supposed it to contain, and which bars him of relief for delay in asserting his rights, short of the period fixed by the statute of limitations."

In Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738, Mr. Justice Brown said:

"The cases are many in which this defense [laches] has been invoked and considered. It is true that, by their difference of fact, no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that, because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them. * * * They all proceed upon the theory that laches is not, like

limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

To the same effect, Pennsylvania Mutual Insurance Co. v. Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626.

In Cox v. Stokes, 156 N. Y. 491, 511, 51 N. E. 316, 322, Judge Vann said:

"Whether the equitable doctrine of laches, as distinguished from the statute of limitations, now exists in this state, is open to serious doubt."

And this was repeated by Judge Gray in Treadwell v. Clark, 190 N. Y. 51, at page 60, 82 N. E. 505, at page 507.

The defendant knew, from the time the mistake was discovered down to the very time of the beginning of this action, precisely what plaintiffs' claim was, and in that respect the situation is similar to that in Boardman v. Lake Shore & Michigan Southern Ry. Co., 84 N. Y. 157. The defendant has not changed its position in any respect by reason of the delay in commencing this suit; on the contrary, it was engaged in actual litigation in regard to the same contract, and knew throughout the whole conduct of that litigation the plaintiffs' claim. This action was commenced within five days after the dismissal of the complaint in that case.

The dismissal of the complaint in the case at bar was erroneous; but, as no evidence was taken upon the question of damages, we are not in a position to direct the final judgment to which plaintiff is entitled.

Therefore the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.